FORT DEARBORN NATIONAL BANK *vs.* CARTER, RICE,
AND COMPANY.

Suffolk.    March 12, 1890. — June 21, 1890.

Present: FIELD, DEVENS, W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Acceptance of Draft — Consideration — Revocation — False Representations.*

Want of consideration between the drawer and drawee is not a defence to the acceptor of a draft passing before acceptance into the hands of a *bona fide* holder for value; and the acceptance cannot be revoked after delivery to such holder's agent, although the fact of acceptance was not known to the holder, and he thereafter made no further advances.

The acceptance of a draft already negotiated for a valuable consideration cannot be rescinded on the ground of fraudulent representations made to the acceptor by the drawer, if the holder had no knowledge of the fraud and the drawer was not his agent.

CONTRACT against the acceptor of a bill of exchange for $625. Trial in the Superior Court, without a jury, before *Mason*, J., who allowed a bill of exceptions in substance as follows.

The plaintiff is a national bank, having its usual place of business in Chicago, where also the Clark & Longley Company, an Illinois corporation, has its usual place of business. The defendant is a Massachusetts corporation, having its place of business in Boston. Before January 1, 1889, the defendant had sold merchandise to the Clark & Longley Company, and on January 17, 1889, the Clark & Longley Company was indebted to the defendant in the sum of about $1,400, for merchandise previously sold and delivered. On January 10, 1889, the Clark & Longley Company wrote, requesting the defendant to accept a draft for its accommodation, which request the defendant refused. On January 17, the Clark & Longley Company again wrote to the defendant, saying that it had been obliged to pay unusually heavy bills for the months of November and December; that it regretted that it had been obliged to make drafts upon the defendant so frequently of late; that its collections had been slow, but were much easier; that it would not need to trouble the defendant after that day; and requested the acceptance of a draft for $625 for its accommodation, which it had drawn upon the

defendant. The defendant had within a short time previously accepted and paid several accommodation drafts for the Clark & Longley Company, which, like this, had been discounted before acceptance.

The Clark & Longley Company presented this draft for $625 to the plaintiff, in Chicago, on January 17; and the plaintiff placed the amount of the draft, less the discount thereof, to its credit. The amount thereof was on the same day drawn out by check by the Clark & Longley Company; and the draft was forwarded, through the Freeman's National Bank of Boston, for acceptance and collection. The draft was presented to the defendant for acceptance on January 19, at its place of business, and about 3 o'clock P. M. on January 21 the defendant accepted the draft, dating the acceptance January 19, 1889, and relying upon the representations contained in the letter of the Clark & Longley Company of January 17, 1889. After 4 o'clock P. M. of January 21, the Clark & Longley Company suspended, and confessed judgment to the plaintiff in the sum of $22,000, which was intended to cover certain indebtedness from the Clark & Longley Company to the plaintiff, but did not cover all of the plaintiff's claims, and did not cover the draft for $625. On the same day an execution issued upon this judgment, and the plaintiff levied upon the property of the Clark & Longley Company. On the morning of January 22 the defendant first learned by telegram from Chicago that the Clark & Longley Company had suspended, and had confessed judgment to the plaintiff. The treasurer of the defendant corporation at once went to the Freeman's National Bank, where the draft was then held awaiting collection at maturity, and asked the cashier to be permitted to cancel and withdraw the defendant's acceptance of the draft. The cashier of the bank refused to permit the treasurer to cancel and withdraw the acceptance, but at his request telegraphed to the plaintiff that, although the draft had been accepted, it would not be paid at maturity. This telegram was the first intimation the plaintiff had received that the draft had been accepted, and it made no advance to the Clark & Longley Company on account of the draft after it had been forwarded to the Freeman's National Bank. The defendant had never promised either the Clark &

Longley Company or the plaintiff to accept this draft. The plaintiff did not know that it was to be an accommodation acceptance, but believed that the draft was a just claim of the Clark & Longley Company against the defendant.

The defendant requested the judge to rule as follows:

" 1. Upon the evidence in this case, there was no consideration for the defendant's acceptance of the draft declared on.

" 2. The plaintiff's action cannot be maintained unless there was a valuable consideration for the defendant's acceptance.

" 3. If the defendant accepted the draft without consideration and for the accommodation of the drawer, and relying on the drawer's representations that it was solvent and its affairs prosperous, and in ignorance of the fact that the drawer was insolvent, and had after the draft was drawn and before presentment confessed judgment to the plaintiff, the defendant could revoke its acceptance, unless the plaintiff had after the acceptance and before notice of the defendant's revocation made an advance on the draft to the drawer.

" 4. The defendant could revoke its acceptance at any time before notice of its acceptance had been given to the plaintiff."

The judge refused so to rule in terms, but ruled as follows:

" 1. Upon the evidence, there was no consideration as between the drawer and drawee, and no new consideration as between the plaintiff and any party to the bill at or subsequent to the acceptance, but prior to and at the time of the acceptance the plaintiff was a *bona fide* holder for value, and want of consideration as between drawer and drawee does not prevent its recovery.

" 2. The defendant could revoke its acceptance at any time before the communication of such acceptance to the plaintiff or to the plaintiff's agent, but. could not revoke the acceptance after delivering the same to the Freeman's National Bank, the agent of the holder."

The judge found for the plaintiff; and the defendant alleged exceptions.

*W. B. French*, for the defendant.

*W. A. Knowlton*, for the plaintiff.

FIELD, J.    It is clear that the first ruling made by the court is correct, and that the first and second rulings requested were

rightly refused.   *Arpin* v. *Owens*, 140 Mass. 144.   *Heuertematte* v. *Morris*, 101 N. Y. 63.

When the draft with the defendant's acceptance upon it was delivered by the defendant to the Freeman's National Bank, which was the agent of the plaintiff, the contract of acceptance between the plaintiff and the defendant became complete, and the acceptance could not after that be revoked unless the defendant had the right to rescind the contract.   The second ruling, therefore, is correct, and the fourth ruling requested was rightly refused, if these rulings relate to a revocation as distinguished from a rescission.

The third ruling requested suggests that possibly the defendant's counsel had it in mind to contend that the letter of the 17th of January from the Clark & Longley Company to the defendant corporation, upon which it relied in accepting the draft, contained a representation that the company was solvent; that this representation was false; and that therefore, when the defendant discovered that the representation was false, it had the right to rescind the contract of acceptance, unless the plaintiff had after the acceptance " made an advance on the draft to the drawer."   Although the Clark & Longley Company suspended payment on the 21st of January, the exceptions do not state that the company was not solvent on the 17th of January, and it is doubtful if the letter can be construed as containing any positive representation of solvency, assuming that its contents are correctly stated in the bill of exceptions.   This third request, moreover, does not distinctly assume that the defendant was deceived by any representations which the drawer made, and was thereby induced to accept the draft.   We have some doubt whether the judge, who tried the case without a jury, understood that any question of law was raised concerning the right of the defendant to rescind the contract of acceptance on account of any fraudulent misrepresentations of the drawer of the draft ; still we will consider the question.

Whatever may be the distinction between such a case as the *Merchants' National Bank* v. *National Bank of the Commonwealth*, 139 Mass. 513, and the case of *Merchants' Ins. Co.* v. *Abbott*, 131 Mass. 397, it is manifest that the making of a contract, or the payment of money under a mistake of fact, as these words

are used in the law, is not always followed by the same consequences as the making of a contract, or the payment of money, by reason of the fraudulent misrepresentations of a third person. Certainly the general rule is, that a contract made between two persons on a valuable consideration cannot be rescinded by one of the parties on the ground that a third person, at whose request the party entered into the contract, made fraudulent misrepresentations to him on which he relied, if this third person was not an agent of the other party, and the other party had no knowledge of the fraud. See *Fairbanks* v. *Snow*, 145 Mass. 153. The contract of acceptance was made by the defendant with the plaintiff on what the law considers a valuable consideration; namely, the consideration paid by the plaintiff to the Clark & Longley Company in anticipation of the acceptance. The Clark & Longley Company in inducing the defendant to accept the draft acted on its own account and for its own benefit, and the plaintiff is innocent of any knowledge of or participation in any fraud of that company. There are practical reasons of great weight why the rule we have stated should be applied to negotiable paper. Acceptors of bills of exchange should not be permitted to vary their liability from that which is apparent on the face of the bills, by setting up against *bona fide* holders for value, who took the bills before maturity, statements made by the drawers to the drawees whereby they were induced to accept the bills; and we have been unable to find that any distinction has been taken in this respect between holders of bills who took them before acceptance and those who took them afterwards.

*Exceptions overruled.*