THE TRENT TILE COMPANY v. THE FORT DEARBORN
NATIONAL BANK OF CHICAGO.

54 33
54 599

The drawee of a bill of exchange cannot, after an endorsement of accept-
ance and redelivery of the acceptance to the agent of the holder, on
discovering the insolvency of the drawer, revoke such acceptance, the
drawee having no funds of the drawer in his hands.

On error to Mercer Circuit.

Riley drew a bill of exchange on the Trent Tile Company,
the plaintiff in error, for $850, dated at Chicago November
7th, 1888, payable to the order of the defendant in error.
The defendant in error forwarded the bill to the Mechanics
National Bank of Trenton for presentation and collection.
The bank presented the bill to the drawee on the 12th of
November, and its acceptance, payable at the Mechanics bank,
was endorsed on the bill by drawee's treasurer, and by him
redelivered to the bank. Thereafter, and on the same day,
the treasurer of the tile company learned that Riley had failed
on the 10th of November. On the next day, 13th, the treas-
urer applied to the cashier of the Mechanics bank for leave
to revoke the acceptance and to erase the endorsement and
signature. This the cashier declined to permit, and notice
thereupon was given the bank to refuse payment of the bill.
At the time of the acceptance the drawer had no funds in the
hands of the tile company, and was indebted to it—under the
facts set forth, the Circuit Court of Mercer county ordered
judgment for the plaintiff below for the amount of the bill
and interest.

The present writ of error is to review this judgment.

Argued at June Term, 1891, before BEASLEY, CHIEF
JUSTICE, and Justices VAN SYCKEL, KNAPP and GARRISON.

For the plaintiff in error, *Augustus G. Richey & Son.*

For the defendant in error, *Francis C. Lowthorp.*

The opinion of the court was delivered by

KNAPP, J.    The main question raised and discussed in this case is whether the drawee of a bill of exchange can, after an endorsement of acceptance and redelivery of the acceptance to the agent of the holder, on discovering the insolvency of the drawer, revoke such acceptance, the drawee having no funds of the drawer in his hands.

The general rule is that an acceptance delivered to the holder is irrevocable.    And this is so, whether the acceptance is on account of funds of the drawer of the bill, in the hands of the acceptor, or for the accommodation of earlier parties to the bill.    Citation of authorities for the proposition of law would be superfluous.    The approved writers on the law of commercial paper, and the adjudged cases, are as one on this subject.    *Rand. Com. Paper*, ¶¶ 216, 637.

In commercial law such an engagement, completed by delivery, can be discharged only by payment of the bill, release of the acceptance or its waiver.

An acceptance delivered to the agent of the holder duly authorized to receive it, is in legal effect and for all purposes delivery to the holder.    When the bill bearing the signature of the acceptor by his act or direction comes into the hands of such agent, the contract becomes *eo instanti* a completed one between the acceptor and the principal owner of the bill.

A bill of exchange forwarded to, or delivered into the hands of a bank, or banking house, for the purpose of presentation to the person upon whom the bill is drawn for his acceptance, in the usual course of business, is a transaction that creates the relation of principal and agent between such holder and the bank with authority in such agent to receive in the holder's behalf delivery of the acceptance when signed.

The Mechanics National Bank of Trenton was therefore the agent of the plaintiff to procure in the plaintiff's name acceptance of the bill in question.    The bill was presented to the defendant in due course, and regularly accepted by its authorized officer, and delivered to such agent of the plaintiff. There would thus appear a finished transaction of legally

binding force, vesting rights in the plaintiff which could not thereafter be divested without its consent.

The defendant, however, claims that it had the right to, and did, revoke its act of acceptance.

The contention is grounded upon the authority of the well known case of *Cox et al* v. *Troy*, 5 *B. & Ald.* 474, referred to by all the text writers on negotiable instrument since its decision. This case holds that "where a defendant (drawee) having once written his acceptance with the intention of accepting a bill, afterwards changes his mind, and before it is communicated to the holder, or the bill delivered back to him, obliterates his acceptance, he is not bound as an acceptor." The propositions seemed so plainly just that the justices who decided the case said that the rule rested upon principles of common sense.

The case was simply this. A bill was handed to the drawee for his acceptance; within the time allowed him for decision he had written his name upon the bill, then, on reflection, decided not to accept it, erased his name and handed it back to the party who had delivered it to him.

Prior to this decision there were dicta to be found of eminent English jurists tending to the doctrine that the mere act of signing in secret as acceptor of a bill bound the party so signing to the obligation of a completed contract. And in *Thornton* v. *Dick*, 4 *Esp.* 270, it seems to have been so decided. But this doctrine was ignored in Coxe v. Troy, where the elemental principle was applied, that the secret act of a party could *ripen* into a binding contract only upon the intentional *promulgation* of such act by delivery or its equivalent. The transaction was in no true sense a revocation. It was a refusal to accept the draft. See, also, *Bank* v. *Bank of Victoria*, L. R., 3 P. C. 526.

But it is not apparent how the defendant can profit by anything decided in the case of Cox v. Troy. It is no authority for the asserted right to revoke its act after delivery to the agent of the plaintiff. For such a right neither *dictum* nor

authority has been found in any reported case determined upon principles of the common law.

The case of *Burrows* v. *Jemimo*, 2 *Str.* 733, is cited as a case in point for the plaintiff in error. The point decided was that a man could not be sued in England on his acceptance of a bill of exchange abroad after he had been discharged from liability by the laws of the foreign jurisdiction. The custom referred to in the brief of counsel, and which received the consideration of the court in that case, was not the custom of merchants in England, but the law as it existed in Leghorn, where the contract of acceptance arose. There, if the drawer failed, and the acceptor had not sufficient assets of the drawer in his hands at the time of the acceptance, the acceptance was void.

But here, in the absence of fraud on the part of the plaintiff, which it may be said is feebly asserted and in no degree sustained, the insolvency of the drawer, or the want of funds with the drawee, is no answer to his claim as a *bona fide* holder of the bill.

The judgment below was in accordance with the foregoing views, and should be affirmed.