# Farmers' and Merchants' National Bank of Winchester *v.* Elizabethtown National Bank, Appellant.

*Banks and Banking—Check—Guaranty of payment—Telegram.*

Where a national bank upon which a check is drawn telegraphs through its cashier to another bank in response to an inquiry, that the check is good and will be paid, and the second bank relying upon the telegram cashes the check, the bank upon which the check was drawn cannot justify its subsequent refusal to pay the check, on the ground that the drawer had, in the meantime, stopped payment of it.

*Evidence—Affidavit of defense—Collateral issue.*

A plaintiff has a right to offer the affidavit of defense for the purpose of proving the admissions contained therein, but this does not open up collateral issues in no way raised by nor contained in the offer.

272 FARMERS' BK. *v.* ELIZABETHTOWN BK., Appellant.

Statement of Facts—Opinion of the Court below. [30 Pa. Superior Ct.

Submitted Nov. 14, 1905. Appeal, No. 85, Oct. T., 1905, by defendant, from judgment of C. P. Lancaster Co., Feb. T., 1904, No. 36, on verdict for plaintiff in case of The Farmers' and Merchants' National Bank of Winchester v. Elizabethtown National Bank. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Assumpsit to recover the amount of a check. Before LANDIS, P. J.

At the trial the court gave binding instructions for plaintiff.

Verdict for plaintiff for $992.08, subject to question of law reserved.

On a rule for judgment non obstante veredicto and for a new trial, LANDIS, P. J., filed the following opinion:

On May 27, 1903, Charles H. Harper presented to the Farmers' and Merchants' National Bank of Winchester a check drawn by J. K. Lehman on the Elizabethtown National Bank for $900, with the request that it be cashed. It was not at that time paid, but a telegram was sent by the plaintiff bank to the Elizabethtown National Bank, as follows: "Will you pay check J. K. Lehman $900?" To this telegram, H. C. Lewis, cashier of the Elizabethtown National Bank, replied: "Will pay J. K. Lehman check Nine Hundred Dollars." The plaintiff bank then notified Mr. Harper that the check was good and would be paid, and this was accordingly done. It was then forwarded for collection through the Girard National Bank of Philadelphia, in the usual course of business, but payment was refused by the Elizabethtown National Bank because Lehman had, in the meantime, stopped payment. The check was, as a consequence, protested. There was also some little difficulty about the indorsement, Harper having signed his name thereon as "Charles H. Harper, Jr.," to distinguish himself from another person of the same name ; but this, we think, is of no vital importance, as the man to whom the check was given and with whom the transaction was had was the man who indorsed the check. Under the above facts, we were of opinion that the plaintiff was entitled to recover, and so instructed the jury. The first question arising relates to the correctness of the instructions fixing liability on the defendant, and the second, to the quantum of proof.

In Central Guarantee Trust and Safe Deposit Company v. White, 206 Pa. 611, the present Chief Justice, in discussing the certification of checks, says: "A check by a depositor on his account certified by the bank becomes an obligation of the bank to the payee or holder, and in the absence of fraud or similar exceptional circumstances, the amount is as much withdrawn from the depositor's account as if the money had been paid over the counter." By such a certification, the deposit, which is represented by the check, ceases to stand to the credit of the depositor and passes to the credit of the check holder, who is thereafter a depositor to that amount: Girard Bank v. Bank of Penn Township, 39 Pa. 92. The holder who receives it in the ordinary course of business, in good faith, is a bona fide holder, and entitled to recover from the drawee, even though the check was obtained by the original payee by false pretense and payment thereof has been stopped by the drawer: Nassau Bank v. Broadway Bank, 54 Barb. (N. Y.) 236 ; and a bona fide holder, it is said, can enforce payment even in the absence of funds : Cook v. State National Bank of Boston, 52 N. Y. 96. In fact, the act of congress of March 3, 1869, while declaring that it shall be unlawful for any officer, clerk or agent of any national bank association to certify any check drawn upon the association unless the person or company drawing the check has on deposit with the association at the time such check is certified an amount of money equal to the amount specified in such check, provides that any check so certified by duly authorized officers shall be a good and valid obligation against the association ; but that the person violating the statute shall be guilty of a misdemeanor. The certification may be secured by either the drawer or the payee or holder. If the drawer, for his own benefit, procures it to be certified, and then delivers it to the payee, he is not discharged from liability to the holder; but, if the payee or holder, for his own benefit, gets it certified, all liability on the part of the drawer ceases : Minot v. Russ, 156 Mass. 458 (31 N. E. Repr. 489) ; First National Bank of Jersey City v. Leach, 52 N. Y. 350. A bank is, however, not liable to any save the drawer, except when it has accepted the check by certification or otherwise : Essex County National Bank v. Bank of Montreal, 7 Biss. 193. It is usual for the certification to be in writing upon the face of the check ; but

Vol. xxx—18

no particular form of words is required. In First National Bank of Washington v. Whitman, 94 U. S. 343, it was said by Mr. Justice HUNT : " It is not to be doubted, however, that it is within the power of the bank to render itself liable to the holder and payee of the check. This it may do by a formal acceptance written upon the check, in which case it stands to the holder in the position of a drawer and acceptor of a bill of exchange. . . . It may accomplish the same result by writing upon it the word ' good,' or any similar words which indicate a statement by it that the drawer has funds in a bank applicable to the payment of the check, and that it will so apply them. . . . Whether this certificate be obtained by the drawer before the check is delivered, and is thus made an inducement to the payee to receive the same, or whether it is made upon the application of the payee for his security, is of no importance. It is a contract recognized by the law, valid in its character, which essentially changes the position of the parties. The privity of contract with the drawee, which before pertained to the drawer alone, is now imparted to the payee, and the duty which before existed only to the drawer, now exists to the payee." In In re Armstrong, 41 Fed. Repr. 381, it was held that a telegram promising to pay a certain draft constituted an acceptance of the draft, and no particular form was essential to the acceptance ; that it might be expressed in words or implied from the conduct of the drawee, and it might be verbal or written; that it might be before the bill was drawn, or afterwards ; and in Coffman v. Campbell, 87 Ill. 98, that a telegram agreeing to accept a person's draft for a certain sum for " stock " is not a conditional contract, but an absolute undertaking to accept and pay the same, and a party discounting the draft on the faith of such telegram is entitled to recover the amount of the party so agreeing to accept. In Coolidge v. Payson, 15 U. S. 66, Chief Justice MARSHALL held that a letter written within a reasonable time before or after the date of a bill of exchange, describing it in terms not to be mistaken, and promising to accept it, was, if shown to the person who afterwards takes the bill on the credit of the letter, a virtual acceptance, binding the person who makes the promise ; and in Central Savings Bank v. Richards, 109 Mass. 413, it was decided that one who has promised in a telegraphic dispatch to accept a bill of ex-

change is liable as acceptor to an indorsee who takes it on the faith of the dispatch, although the agreement to accept was made in expectation of a consignment from the drawer, which was never received. See, also, Daniel on Negotiable Instruments, sec. 496.

If, however, the certification, by writing upon the check, is a contract binding upon the bank, whether with funds of the drawer or not, cannot that same contract be established and become equally binding by a promise to pay the check, even though not indorsed in writing upon it, the money to pay the same being in the hands of the bank, and does the technical question of certification enter, to any degree of importance, into the question of liability upon such a promise to pay? This question, we think, is fully answered in the case of North Atchison Bank v. Garretson, 51 Fed. Repr. 168. In that case, Streeter, as agent for the Muscatine Cattle Company, sent a telegram to the bank as follows : " Will you pay James Tate's check on you twenty-two thousand dollars ? Answer." The bank replied : " James Tate is good. Send on your paper." On the faith of the telegram, the cattle company delivered cattle to Tate and accepted his check ; but, when it was presented to the bank, payment was refused ; the first reason assigned being " want of funds," and, subsequently, when the check was again presented, that " Tate had countermanded the same." Judge SHIRAS, in delivering the opinion of the circuit court of appeals, held that whether the check was to be deemed an inland bill of exchange or a certified check were matters aside from the real question at issue ; that the rights of the parties were dependent solely upon whether the bank bound itself unconditionally in writing to pay Tate's check, and that, if that was the fair meaning of the telegrams passing between the parties, then the bank was bound to make good its promise. The court had no doubt but that this was what was intended by the telegrams, and held the bank liable for the amount of the check. To the same effect is Henrietta National Bank v. State National Bank, 80 Texas, 648 (16 S. W. Repr. 321). The latter case, it will be observed, was between two national banks. A check for $1,800, drawn by Ikards on the Henrietta National Bank, was offered to the State National Bank by an indorsee. The cashier of the latter

bank telegraphed to the Henrietta National Bank, " Will you pay E. F. and W. S. Ikard's check for $1,800 on presentation? " The reply was, " Yes, will pay the Ikard check." Upon this, the check was discounted and at once mailed to the drawee, when payment was refused.  It was held that the description given in the telegram, with the reply being acted upon, was sufficient in an action for failure or refusal to pay the check. In Pope v. Bank of Albion, 59 Barb. (N. Y.) 226, it was held that " any language, whether verbal or written, employed by an officer of a banking institution whose duty it is to know the financial standing and credit of its customers, representing that a check drawn upon it is good and will be paid, estops the bank from thereafter denying, as against a bona fide holder of the check, the want of funds to pay the same ; " and in Brinkman v. Hunter, 73 Mo. 172, that a telegram of a defendant is a promise in writing within the statutes of the state of Missouri relating to the acceptance of bills of exchange.  Therefore, viewed from either side, it would seem to me that the Elizabethtown National Bank was liable to the plaintiff for the money paid out on the faith of its telegram, and, if the proof was sufficient, the verdict should be sustained.  The learned counsel for the defendant, however, insists that the bank, in this case, was a guarantor, and, therefore, as a national bank, having no power to lend its credit, its act, for this reason, was ultra vires.  One of the cases chiefly insisted upon to support this view is Bowen v. Needles National Bank, 94 Fed. Repr. 925.  In that case, the bank advised the plaintiff that it would pay all checks of a third person, although such person had no funds on deposit, as was known to both plaintiff and the bank, and, in reliance on such promise, plaintiff cashed the checks and transmitted them to the bank for payment.  The bank issued and sent to plaintiff its drafts on a correspondent for the amount of the checks, which drafts were refused payment, and it was held that this contract was one purely of guaranty, was ultra vires on the part of the bank, and the transaction gave the plaintiff no right of action against it on the drafts.  Whatever may be thought of the force of the reasoning of the learned judge delivering the opinion, it is clear that the facts presented have no similarity to those in the present case.  Here, the bank refused to pay, because the drawer of the check had

stopped payment, and it nowhere appears in the case that there were not sufficient funds in the bank to pay the obligation. The cases upon this subject are based, as is shown in Commercial Nat. Bank v. Pirie, 82 Fed. Repr. 799, upon the fact that the act of congress authorizing the organization of national banks confers no authority upon them, either in express terms or by implication, to guarantee the payment of debts contracted by a third person and solely for his benefit; while, as to the certification of checks, there is, as has been noted above, express power.

Upon the trial, the plaintiff called the cashier of the Farmers' and Merchants' National Bank of Winchester as a witness, and attempted to show by him the sending of the telegram of inquiry to the Elizabethtown National Bank. It, however, unexpectedly appeared that the telegram produced was merely a copy and not the original, and thereupon counsel for the defendant objected to its admission. In order to overcome this difficulty, and also to prove that the defendant's officer sent the telegram of reply, the plaintiff offered in evidence the affidavit of defense, which, upon this point, reads as follows: " It admits that, on May 27, 1903, J. K. Lehman drew to the order of Charles H. Harper a check upon the Elizabethtown National Bank for nine hundred dollars ($900), a copy of which check, as originally drawn, appears at the top of page four of plaintiff's statement. . . . It admits that on May 27, 1903, The Farmers' and Merchants' National Bank sent to the defendant the telegram marked 'Exhibit B,' which reached Elizabethtown after the bank was closed, and which was answered on May 28, 1903, by the telegram marked 'Exhibit C.' " The defendant's counsel, then closing his case without offering any testimony, requested to go to the jury on certain other allegations in the affidavit of defense, claiming that the affidavit of defense was before the jury for all purposes, and an issue of fact was raised thereby. It, however, was my opinion that the question before the court involved purely a legal liability of the defendant upon the telegrams, and that the collateral allegations in the affidavit of defense could not be considered. In Bowen v. DeLattre, 6 Whart. 430, in an action by the payee against the maker of a promissory note, it was held that an affidavit of defense made by the defendant, in which he admitted

the making of the note, might be read in evidence by the plaintiff as an admission of the same.   Mr. Justice ROGERS said : "If the same admission had been made, either verbally or in writing, it would have gone to the jury as competent proof, without objection, for the admissions of a party to the suit against his interest are always received in favor of the other side.   Nor is it material when or where the admission is made, nor in what form or suit, or whether before or after the commencement of the action, before arrest or after, or whether written or by parol."   This case has lately been cited with approval in Stewart v. Gleason, 23 Pa. Superior Ct. 325.   In Stockwell v. Loecher, 9 Pa. Superior Ct. 241, it was held that an affidavit of defense being admissible in evidence, it was not error for the court to admit the entire record, restricting the purpose of the offer to the affidavit of defense as showing an admission by the defendant; and in Jacoby v. North British and Mercantile Insurance Company of London and Edinburgh, 10 Pa. Superior Ct. 366, that, where an affidavit of defense in a suit on an insurance policy admits the execution of the policy and its delivery, but denies the adjustment and the furnishing of proofs of loss, the affidavit is admissible in evidence for the purpose of showing these admissions.   See, also, Fisher v. The Fidelity Mutual Life Association of Philadelphia, 188 Pa. 1. In Neely v. Bair, 144 Pa. 250, a rule of court provided that if the plaintiff should file with his declaration or statement a specific averment of fact sufficient to support his claim, verified by affidavit, and served on the defendant or his counsel of record, such material averments of fact as were not denied by affidavit filed with or before plea pleaded should be taken as admitted.   A statement of claim in assumpsit averred the sale and delivery of certain chattels by the plaintiff to the defendant on a day certain and at a price agreed upon at the time. The affidavit of defense did not deny the sale, delivery or price of the chattels, but set up a substantive defense of matters in avoidance of all liability to the plaintiff.   It was held that it was error to refuse the plaintiff's offer of the statement of claim and affidavit of defense as evidence of the sale, delivery and price of the property, and that, under the said rule of court, he had a right to rest upon the prima facie case thus presented. See, also, Whitehead v. School District, 145 Pa. 418.   In Page

v. Simpson, 172 Pa. 288, where, in an action of ejectment, the abstract of title of both plaintiff and defendant was offered in evidence for the sole purpose of showing that the defendant recognized the common source of title and claimed under it, it was decided that the defendant's abstract was before the jury for the specific purpose of the offer, and for no other purpose, and that the fact that the defendant's abstract was admitted in evidence in the plaintiff's case did not relieve the defendant of the burden of showing how he derived his title from the common source, and that the sale under which he claimed was prior in time to that under which the plaintiff claimed.

I am of opinion that the plaintiff had a right to offer the affidavit of defense for the purpose of proving the admissions contained therein, and that this did not open up collateral issues in no way raised by nor contained in the offer. The right conclusion seems to me to have been reached by the verdict, and I, therefore, think that these rules should be discharged. Rules discharged.

*Error assigned* was in entering judgment on the verdict.

*W. U. Hensel,* for appellant.—Our contention is that the check in this case was not so certified that it could be properly charged against the drawer's account, and his notice not to pay it was operative and binding on the defendant bank if received before the check was actually paid: Carr v. National Security Bank, 107 Mass. 45 ; Bank·of the Republic v. Millard, 77 U. S. 152; Gibson v. Cooke, 37 Mass. 15; Brown's Case, 2 Story, 502; Girard Bank v. Bank of Penn Twp., 39 Pa. 92.

The cashier of the defendant, a national bank, could not impose upon it the liability to pay a check by guaranteeing or expressing by telegraph a willingness to pay it.

A national bank has no power or authority to become a mere accommodation indorser or guarantor of the payment of the debt of another without benefit to itself: Nat. Bank of Brunswick v. Sixth Nat. Bank, 212 Pa. 238.

Binding instructions should not be given when the facts are in dispute, or the evidence is conflicting, inconclusive, or sufficient to justify a different finding, or when it should be submitted to the jury on its credibility or sufficiency, or on a

question of fact to be determined by the jury, only, from all the circumstances of the case, though the evidence may be uncontradicted: Wilmarth v. Mountford, 8 S. & R. 124 ; Spangler v. Hummer, 3 P. & W. 370; Newbold v. Wright, 4 Rawle, 195; American Telegraph Co. v. Lennig, 139 Pa. 594; Percival v. Harres, 142 Pa. 369 ; Stoddart v. Price, 143 Pa. 537 ; Cougle v. McKee, 151 Pa. 602 ; Holland v. Kindregan, 155 Pa. 156 ; Schrimpton v. Bertolet, 155 Pa. 638 ; McKeesport Borough v. Wood, 160 Pa. 113.

*W. C. Douglas, Jr.*, for appellee.—The telegrams exchanged between plaintiff and defendant banks constituted a valid certificate: Ravenswood Bank v. Reneker, 18 Pa. Superior Ct. 192 ; In re Armstrong, 41 Fed. Repr. 381; Central Savings Bank v. Richards, 109 Mass. 413 ; Coffman v. Campbell, 87 Ill. 98; Molson's Bank v. Howard, 40 N. Y. Sup. Ct. 15 ; North Atchison Bank v. Garretson, 51 Fed. Repr. 168 ; Henrietta Nat. Bank v. State Nat. Bank, 80 Texas, 648 (16 S. W. Repr. 321.)

It is immaterial in this case that the check in question when first presented for payment was not indorsed as drawn : Girard Bank v. Bank of Penn Twp., 39 Pa. 92; Farmers' & Mechanics' Bank v. Butchers' and Drovers' Bank, 11 N. Y. Sup. Ct. 219 ; Merchants' Bank v. Spicer, 6 Wend. 443.

It is likewise immaterial that there may not have been funds to meet the check when presented, or that the consideration failed: Hill v. Trust Co., 108 Pa. 1 ; Cooke v. State Nat. Bank, 52 N. Y. 96 ; Nassau Bank v. Broadway Bank, 54 Barb. (N. Y.) 236 ; Penn Bank v. Frankish, 91 Pa. 339.

It is also immaterial that the act of the cashier of the defendant bank in promising to pay the check may not have been authorized by defendant: Cooke v. State Nat. Bank, 52 N. Y. 96 ; Bank of Barnwell v. Sixth Nat. Bank, 28 Pa. Sup. Ct. 413 ; Carr v. National Security Bank, 107 Mass. 45.

The affidavit of defense having been offered in evidence for the purpose of proving certain admissions, its use was properly restricted to this purpose, and there was not created, by reason of its collateral allegations, an issue of fact on which defendant had the right to go to the jury: McKeesport Borough v. Wood, 160 Pa. 113 ; Clarke Nat. Bank v. Bank of Albion, 52 Barb. 592 ;

Bowen v. De Lattre, 6 Whart. 430; Stockwell v. Loecher, 9 Pa. Superior Ct. 241; Jacoby v. Ins. Co., 10 Pa. Superior Ct. 366; Neely v. Bair, 144 Pa. 250; Page v. Simpson, 172 Pa. 288; Blair v. Ford China Co., 26 Pa. Superior Ct. 374.


PER CURIAM, March 12, 1906:

The judgment is affirmed upon the opinion of the learned president judge of the common pleas.