Hamburger Bros. & Co., Inc., Appellant, *v*. Third National Bank & Trust Company of Scranton, Appellant, et al.

Argued January 25, 1939.  Before KEPHART, C. J.,
SCHAFFER, DREW, LINN, STERN and BARNES, JJ.

*Walter L. Hill,* of *O'Malley, Hill, Harris & Harris,* for appellant, No. 419.

*Philip V. Mattes,* with him *Jacob Meadow,* for appellant, No. 421.

*M. J. Martin,* for appellee.

Opinion by Mr. Justice Stern, March 22, 1939:

Plaintiff, a New York business concern, was the payee of a promissory note executed by Continental Cigar Corporation, a corporation engaged in business in Scranton. Plaintiff deposited the note in a New York bank for collection, which sent it for that purpose to the First National Bank of Scranton. The maker gave instructions that the note was to be presented at the Third National

Bank & Trust Company of Scranton, where it maintained an account. Accordingly, at three o'clock of the day on which the note matured, the First National sent the note, in the hands of a notary public, to the Third National for payment. There were ample funds of the maker on hand there with which to make payment, and, acting on telephone instructions from the maker, the assistant cashier of the Third National wrote on the note the letters "O.K.," to which he added his initials. It was then handed back to the notary, who returned with it to the First National. Just as he arrived there he found that the Third National was informing the First National by telephone that the maker had called up and stated that it did not want the note paid or O.K.'d, and was therefore requesting the First National to erase the "O.K." This was done by the notary, who then protested the note on the alleged ground that answer had been made "Not provided for," and the First National returned the note to the New York bank as dishonored. When plaintiff, some time later, learned of what had taken place, it brought the present action against the two Scranton banks,—against the Third National on the theory that it had made itself liable by its certification of the note, and against the First National for the reason that it had breached its duty as plaintiff's agent. The learned trial judge, who heard the case without a jury, gave judgment in favor of defendants. On appeal to the Superior Court the judgment was affirmed as to the First National but reversed as to the Third National, and entry of judgment against the latter was directed: 132 Pa. Superior Ct. 421. An allocatur being allowed, there are now before us two appeals, the one by plaintiff because of the rejection of its claim against the First National, and the other by the Third National because of the judgment against it. Plaintiff admits that if the judgment against the Third National is sustained its appeal in regard to the First National must be dismissed, and since we have reached the conclusion that

the entry of judgment against the Third National was properly ordered by the Superior Court it will be unnecessary to discuss plaintiff's appeal.

The Third National Bank is obliged at the outset to admit that in the presentation of the note for payment the First National was plaintiff's agent. Whatever may have been the law prior to 1931, the Bank Collection Act of that year, P. L. 568, provides, section 2, that "where an item is deposited or received for collection, the bank of deposit shall be agent of the depositor for its collection, and each subsequent collecting bank shall be subagent of the depositor." Defendant (Third National Bank) must also concede that, while the notary acted as a public official in the performance of his duty of protesting the note, in presenting it for payment he was merely the private agent of plaintiff or of the First National or of both, and as to that operation was the same as any other messenger who might have been employed for the purpose: *Bellemire v. Bank of the United States,* 4 Wharton 105, 113; *Parke v. Lowrie,* 6 W. & S. 507; *Vandewater v. Williamson,* 13 Phila. Rep. 140. It follows,—and to this extent also defendant acquiesces,— that, if the Third National had paid the note in cash, such payment to the notary would have been payment to the First National and therefore to plaintiff, and the money thus paid would not have been recoverable by the Third National or by the maker in the absence of fraud or mistake; there is no pretense that such elements were here present.

Defendant's position on this appeal is thus reduced to the contention that there is a difference in legal effect between paying in cash and writing "O.K." upon a note. Defendant argues that the First National, as collecting bank, was unauthorized to accept payment in any other medium than money, that the O.K.ing of the note was merely an offer to the First National as plaintiff's agent to accept payment in that form, that until such offer was accepted it was revocable, and that it was in fact re-

voked with the acquiescence of the First National. This view of the case, plausible as it may superficially appear, overlooks the vital fact that a practice existed among Scranton banks whereby, instead of negotiable instruments being paid in cash upon presentation at the bank where payable, they were marked "O.K.," with the added initials of the proper official, and were turned in by the collecting bank the next day for payment through the clearing house as an obligation of the certifying bank. The trial judge, upon adequate evidence, found that such a local custom existed, and that, in accordance with it, the writing of the letters "O.K." on negotiable paper was treated by the banks as the equivalent of a certification that the instrument was good and would be paid on the following day through the clearing house. Of course, it is ordinarily true that an agent is without authority to accept anything except legal tender for the debt of his principal, but in selecting a bank as collecting agent a depositor is bound by any reasonable usage, whether known to him or not, which prevails among the banks at the place where the collection is to be made: see *Jennings v. United States Fidelity & Guaranty Co.,* 294 U. S. 216, 220. This has been written into the statute law of the State in the Bank Collection Act of 1931, P. L. 568, section 9 of which provides that "Where ordinary care is exercised, any agent collecting bank may receive in payment of an item without becoming responsible as debtor therefor . . . such method of settlement as may be customary in a local clearing house or between clearing banks or otherwise." A collecting bank is not obliged to exercise the right thus given, but here the First National did follow the custom by sending the notary without instructions to demand cash; in the myriad of transactions occurring daily between banks it must be presumed that they are intended to be conducted in conformity with prevailing practices unless there be some expression to the contrary. The notary was sent to the Third National to obtain, not cash, but the usual

"O.K.,, in accordance with the custom, and, when he received it, and with the O. K.'d note in his hand stepped away from the teller's window of the Third National, the transaction was completed as to all the parties concerned. The O.K.ing of the note was not an offer by the Third National to the First National to give a certification instead of cash, but rather an acceptance by the Third National of the application of the First National that, in accordance with the banking custom, the note should be certified. This being done, there was nothing further for the First National to do or to say; any optional power it had possessed to demand cash was waived when its messenger was sent to handle the transaction according to the customary mode of procedure.

There is no particular formula which need be used in order to accept or certify a negotiable instrument. The words "accepted" and "certified" are not talismanic. The word "good" has frequently been judicially approved: *First National Bank of Washington v. Whitman,* 94 U. S. 343, 345; *Farmers & Merchants' National Bank v. Elizabethtown National Bank,* 30 Pa. Superior Ct. 271; *Muth v. St. Louis Trust Co.,* 88 Mo. App. 596, 604; *Barnet v. Smith,* 30 N. H. 256, 265, 266. The writing of the drawee's name across the face of the instrument has been held sufficient: *Peterson v. Hubbard,* 28 Mich. 197. Whatever the disputed origin of the letters "O.K.," they have become so popularly accepted as the equivalent of "all correct," or "all right," or "good," that only an extreme purist would refuse to recognize their intended import: see "Letters 'O. K.' As Check Certification," 2 Paton's Digest (published by American Bankers Association) 1065, 1066.

The Negotiable Instruments Act does not make any provision for the certification of promissory notes, but section 196 states that "In any case not provided for in this act, the rules of the law merchant shall govern," and in banking practice notes are certified in the same way as checks and with no difference in legal result:

Daniel on Negotiable Instruments, vol. 1, p. 180, sec. 149; *Meads v. Merchants' Bank of Albany,* 25 N. Y. 143, 148; *Riverside Bank v. First National Bank of Shenandoah,* 74 Fed. Rep. 276.

What is the effect of the certification of a check? The answer is clearly set forth in the authorities. By such certification the bank becomes a direct obligor to the payee of the check. The transaction is the same as if the holder had received cash in payment and had then redeposited the money in the certifying bank to his own credit. The certification works an automatic transfer of the amount of the check from the account of the maker to the credit of the payee. It constitutes an absolute and unconditional engagement by the bank to make payment, not as if it were the debt of another, but as its own obligation: *Girard Bank v. Bank of Penn Township,* 39 Pa. 92, 99; *Central Guarantee Trust & Safe Deposit Co. v. White,* 206 Pa. 611, 614; *Marks v. Anchor Savings Bank,* 252 Pa. 304, 307; *Bulliet v. Allegheny Trust Co.,* 284 Pa. 561, 567; *Union Bank & Trust Co. v. Girard Trust Co.,* 307 Pa. 488, 505; *Schmitt v. Mellon National Bank,* 67 Pa. Superior Ct. 453, 456; *Steiner v. Germantown Trust Co.,* 104 Pa. Superior Ct. 38, 40; *Meads v. Merchants' Bank of Albany,* 25 N. Y. 143; *Riverside Bank v. First National Bank of Shenandoah,* 74 Fed. Rep. 276. "The payee of the check, before delivering it to the defendant, had caused it to be certified. The legal result was the same as if he had received the cash over the counter": *Whiting v. Hudson Trust Co.,* 234 N. Y. 394, 404, 138 N. E. 33, 36. "The certification of a check by the bank is equivalent to payment": *Wachtel v. Rosen,* 249 N. Y. 386, 390, 164 N. E. 326, 327. If the certification is procured at the instance of the holder of the check, all liability on the part of the maker and the endorsers ceases, and the obligation of the certifying bank becomes the *sole* recourse for the payee: Negotiable Instruments Act of May 16, 1901, P. L. 194, sec. 188; *Farmers' & Merchants' National Bank v. Elizabethtown*

*National Bank,* 30 Pa. Superior Ct. 271, 273; *Wachtel v. Rosen,* 249 N. Y. 386, 390, 164 N. E. 326, 327.

In *Bulliet v. Allegheny Trust Co.,* 284 Pa. 561, 568, there is a quotation from Joyce, Defenses to Commercial Paper (2d ed., 1924), vol. 2, sec. 850, as follows: "By the law merchant of this country, the certificate of the bank that a check is good is equivalent to acceptance. It implies that the check is drawn upon sufficient funds in the drawee's hands and that they have been set apart for its satisfaction and that they shall be so applied whenever the check is presented for payment. It constitutes an undertaking not only that the check is then good but that it will continue good. Such an agreement is as binding and obligatory upon banks as their notes of circulation, or any other valid obligation. The purpose of certifying a check as regards both parties is to enable the holder to use it as money."

Such being the nature and legal consequences of the certification of a negotiable instrument, it necessarily follows that, in the absence of mistake (in which case, as, for example, where there were not sufficient funds of the maker in the hands of the bank at the time the certification was made, it is sometimes, but not universally, held that the certification may be corrected so long as the rights of third persons have not intervened), the certification when made is irrevocable, at least where it was procured by the holder and not by the maker himself, even though the instrument may not have come into the hands of a new purchaser for value: *Riverside Bank v. First National Bank of Shenandoah,* 74 Fed. Rep. 276; *Trent Tile Co. v. Ft. Dearborn National Bank,* 54 N. J. L. 33, 23 A. 423, affirmed 54 N. J. L. 599; *Ft. Dearborn National Bank v. Carter, Rice & Co.,* 152 Mass. 34, 25 N. E. 27.* Any other rule would gravely impair the re-

---

* In each of the two last cited cases there was an acceptance of a bill of exchange, but the governing principle is the same, the certification of a check being equivalent to an acceptance: Negotiable Instruments Act of May 16, 1901, P. L. 194, sec. 187.

liability of commercial paper and the uniformity of the law merchant; indeed one of the purposes in having a check certified is to prevent payment from being thereafter stopped or impeded. Neither the First National Bank, as collecting agent for plaintiff, nor the notary, had any more authority or right to consent to the erasure of the "O. K." which had been placed upon the note than they would have had to return their principal's money to the Third National Bank had payment been made in cash; this, of course, would have been wholly beyond their power: *Monongahela National Bank v. First National Bank of California, Pa.*, 226 Pa. 270. The making of the erasure was a mere spoliation which effected no legal change in the liability of the Third National Bank.

The order of the Superior Court is affirmed.