J-S78019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VINCENT DEAN CORDOVA, JR. | : | |
| | : | |
| Appellant | : | No. 920 EDA 2017 |

Appeal from the Judgment of Sentence Entered January 12, 2016
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0005919-2015

BEFORE: LAZARUS, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED MARCH 26, 2019**

Vincent Dean Cordova, Jr. appeals from the judgment of sentence entered on January 12, 2016. Cordova pled guilty to forgery and maintains that the trial court improperly graded it as a felony of the second degree (F2), when it should have been a felony of the third degree (F3). He argues he should therefore have been permitted to withdraw his guilty plea. We affirm.

The facts giving rise to Cordova's guilty plea are as follows:

[Cordova] fraudulently pass[ed] a forged certified check drawn on a Phoenixville Federal Bank & Trust draft in the amount of One Thousand Five Hundred and [00]/100 dollars ($1,500.00) payable to Springfield Hyundai on July 8, 2015 for the purchase of a used BMW sedan.

Springfield Hyundai contacted Phoenixville Federal Bank & Trust and spoke with the [sic] Chuck Benz. Chuck Benz is the Senior VP/Branch Coordinator/Security Officer of the bank. Benz confirmed that check (#992) was written against a closed account and also stated that check was a forgery and not a legitimate check from Phoenixville Federal Bank & Trust.

_____

* Former Justice specially assigned to the Superior Court.

Trial Court Pa.R.A.P. 1925(a) Opinion (TCO), filed June 14, 2018, at 1-2.

On January 12, 2016, Cordova pled guilty to forgery as an F2 and theft by deception.[1] **See** N.T. Guilty Plea Hearing, 1/12/16 at 10; **see also** Guilty Plea Statement ¶ 23. The trial court sentenced Cordova the same day. Cordova filed a *pro se* Post Conviction Relief Act petition on January 21, 2016.[2] The following day he filed a *pro se* motion to withdraw his guilty plea, a post-sentence motion, and a notice of appeal to this Court. Following the notice of appeal, defense counsel filed a motion to withdraw his appearance with this Court. We remanded for a **Grazier** hearing, which resulted in the trial court appointing new counsel.[3] When the case returned to this Court we entered a rule to show cause why the appeal should not be quashed. Newly appointed counsel agreed that the appeal should be quashed and we therefore quashed the appeal as interlocutory. **See Commonwealth v. Cordova**, No. 335 EDA 2016 (Pa.Super. filed September 12, 2016) (citing **Commonwealth v. Borrero**, 692 A.2d 161, 161 & n.5 (Pa.Super. 1997) (quashing and remanding where appellant filed notice of appeal before trial court ruled on post-sentence motion and directing trial court to consider post-sentence motion *nunc pro tunc* on remand)). The trial court denied the post-sentence motion and this timely appeal followed.

---

[1] 18 Pa.C.S.A. §§ 4101(a)(2) and 3922(a)(1).

[2] The trial court denied the petition on September 5, 2018.

[3] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

On appeal, Cordova raises two issues for our review:

I.    Whether the charge of [f]orgery to which [Cordova] pled was improperly graded as a second degree felony, where [Cordova] admitted to forging a certified check, which is a commercial instrument and is properly graded as a third degree felony?

II.   Whether [Cordova] should be permitted to withdraw his guilty plea as not having been knowingly and voluntarily entered, where [Cordova] was advised that he was pleading guilty to a [f]orgery count graded as a second degree felony when it was properly graded as a third degree felony?

Cordova's Br. at 4.

"The proper grading of a criminal offense is an issue of statutory interpretation and implicates the legality of the sentence imposed." *Commonwealth v. Felder*, 75 A.3d 513, 515 (Pa.Super. 2013). Thus, our standard of review is *de novo* and our scope of review is plenary. *Id.* The relevant portion of the Pennsylvania forgery statute is as follows:

> Forgery is a felony of the second degree if the writing is or purports to be part of an issue of money . . . . Forgery is a felony of the third degree if the writing is or purports to be a . . . commercial instrument . . . . Otherwise forgery is a misdemeanor of the first degree.

18 Pa.C.S.A. § 4101(c). "The distinctions in the grading provision of the statute go to the **type** of writing involved." *Commonwealth v. Hughes*, 986 A.2d 159, 161 (Pa.Super. 2009) (emphasis in original) (quoting *Commonwealth v. Smith*, 883 A.2d 612, 614 (Pa.Super. 2005)).

Cordova argues that the forgery of a certified check is properly graded as an F3 because "[a] certified check . . . is more akin to a personal check . .

. because it is only enforceable by the holder of the check and not the bearer, cannot be used to purchase anything and cannot be exchanged for cash." Cordova's Br. at 8. He maintains that "[t]he lack of intrinsic monetary value of a certified check diminishes the possibility of widespread fraud and renders forgery of a certified check a third degree felony." *Id.* In arguing that a certified check is more akin to a personal check, he relies on our decision in *Commonwealth v. Muller*, where this Court concluded "that a bank check would be considered a commercial instrument" as described in the statute and therefore is properly graded as an F3. 482 A.2d 1307, 1311 (Pa.Super. 1984).[4]

Here, the trial court held that Cordova's forgery conviction was properly graded as an F2 based on the rationale of this Court's decision in *Hughes*. In *Hughes*, we concluded that the trial court properly graded the forgery of cashier's checks as an F2 because "cashier's checks are items of 'intrinsic value' similar in form and function to money orders." *Hughes*, 986 A.2d at 163. We distinguished our decision in *Muller*, stating:

> In that case, we determined that forged personal checks were commercial instruments and graded as third-degree felonies. As explained in detail above, cashier's checks are issued by the bank while personal checks are not. A bank guarantees funds when issuing a cashier's check; as such, the issuance is akin to the transmission of money. In contrast, a personal check is subject to verification of available funds before release, thereby making it a commercial instrument.

*Hughes*, 986 A.2d at 163.

---

[4] Muller was charged with forgery for using "stolen bank checks." *Muller*, 482 A.2d at 1310.

In **Hughes**, we also relied on our decision in **Commonwealth v. Pantalion**. 957 A.2d 1267, 1275 (Pa.Super. 2008). There, we held that the forgery of money orders was properly graded as an F2 because "the second-degree felony grading was intended to apply to 'documents which require special expertise to execute, which can readily be the means of perpetrating widespread fraud, and the forgery for which can undermine confidence in widely circulating instruments representing wealth.'" **Pantalion**, 957 A.2d at 1273 (quoting **Commonwealth v. Ryan**, 909 A.2d 839, 842-43 (Pa.Super. 2006)). In contrast, third-degree forgery felonies consists of "writings which create or otherwise affect legal relations." **Id.**

The forgery statute does not explicitly identify the proper grading of the forgery of a certified check. We therefore must, as in **Hughes**, "interpret the statute." **Hughes**, 986 A.2d at 161. We do so mindful of the following principles:

> [T]he Statutory Construction Act of 1972 ("Act") ... 1 Pa.C.S.A. § 1501 *et seq* ... instructs, in relevant part that, the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly, and [w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S.A. § 1921(a), (b). A court should resort to other considerations, such as the General Assembly's purpose in enacting a statute, only when the words of a statute are not explicit. 1 Pa.C.S.A. § 1921(c). The Act also provides that [w]ords and phrases shall be construed according to the rules of grammar and according to their common and approved usage, but that technical words and phrases and such others as have acquired a peculiar and appropriate meaning ... shall be construed according to such peculiar and appropriate meaning. 1 Pa.C.S.A. § 1903(a). Finally, in ascertaining the General Assembly's intent, we may

presume that the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable. 1 Pa.C.S.A. § 1922(1)."

*Id.* at 161 (quoting ***Commonwealth v. Diamond***, 945 A.2d 252, 256 (Pa.Super. 2008) (alterations in original)).

The Commercial Code defines a certified check as "a check accepted by the bank on which it is drawn." 13 Pa.C.S.A. § 3409(d). Similarly, *Black's Law Dictionary* defines it as "a check drawn on a bank that guarantees, on the face of the check, the availability of funds for the check." *Black's Law Dictionary*, Check (10th ed. 2014). "[O]ne of the purposes in having a check certified is to prevent payment from being thereafter stopped or impeded." ***Hamburger Bros. & Co. v. Third Nat'l Bank & Trust Co. of Scranton***, 5 A.2d 87, 91 (Pa. 1939). A certified check has especial significance because:

> A check by a depositor on his account, certified by the bank, becomes an obligation of the bank to the payee or holder, and in the absence of fraud or similar exceptional circumstances the amount is as much withdrawn from the depositor's account as if the money had been paid over the counter.

***Cent. Guar. Trust & Safe Deposit Co. v. White***, 56 A. 76, 76 (Pa. 1903).

The above descriptions and definitions lead us to the conclusion that a certified check is "an issuance of money" and therefore is properly graded as an F2. Unlike a personal check which "is subject to verification of available funds before release," a certified check "guarantees funds," thereby making it

"akin to the transmission of money."[5] **Hughes**, 986 A.2d at 163. Therefore, we agree that the trial court properly graded the forgery here as a F2. Since we have come to this conclusion, Cordova's second claim challenging his guilty plea warrants no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/26/19

---

[5] We find the following persuasive:

> A certified check is in all cases a promissory note of the bank, and has ceased to be a check at all. In other words, a certified check is a substituted obligation, the result of a novation, by which the maker is discharged. The holder or payee impliedly says, 'Give me the promise of the bank, and I will discharge you;' and the maker says to the bank, 'Promise the payee, and I will discharge you *pro tanto*.' The check is necessarily thereby extinguished. As has been said in numerous cases, a certified check is the same as a certificate of deposit, and it is nothing more."

Francis R. Jones, *The Liability of the Maker of a Check After Certification*, 6 Harv. L. Rev. 138, 143 (1893).