**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Brian HUGHES, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 24, 2009.
Filed Dec. 14, 2009.

Melissa R. Montgomery, Maheim, for appellant.

David J. Arnold, Jr., Asst. Dist. Atty., and Nichole L. Eisenhart, Asst. Dist. Atty., for Com., appellee.

10. *Commonwealth v. Grazier,* 552 Pa. 9, 713 A.2d 81 (1998).

BEFORE: ALLEN, FITZGERALD *, and HUDOCK **, JJ.

OPINION BY HUDOCK, J.:

¶ 1 Appellant, Brian Hughes, appeals from the order dated January 20, 2009, dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541–9546. We affirm.

¶ 2 The facts and procedural history are as follows. The Commonwealth charged Appellant with one count each of forgery, identity theft, theft by deception, and criminal conspiracy[1] after Appellant and two co-defendants signed Benjamin Maurer's name without consent, or fraudulently induced him to sign his name, to a total of seven cashier checks and then cashed them. Appellant entered an open guilty plea to the charges on July 2, 2007. On October 3, 2007, the trial court sentenced Appellant to an aggregate term of three to 18 months' imprisonment. On November 28, 2007, Appellant filed a *pro se* motion to withdraw his guilty plea and the trial court notified him that he failed to attach a corresponding order. Appellant did not respond and the trial court never ruled on Appellant's motion. On July 2, 2008, Appellant filed a motion to reinstate his post-sentence rights *nunc pro tunc*, which the trial court denied.

¶ 3 On September 5, 2008, Appellant filed a *pro se* PCRA petition and the PCRA court appointed counsel to represent Appellant. The PCRA court initially denied Appellant relief without a hearing in an opinion dated December 1, 2008. On December 18, 2008, Appellant filed a counseled response requesting a hearing to resolve a challenge to the legality of his

sentence. Specifically, Appellant argued that the Commonwealth inappropriately graded the forgery charge as a second-degree felony instead of a third-degree felony. Following a hearing, the PCRA court denied relief. This timely appeal followed.

¶ 4 Appellant presents the following issue for our review:

Whether the trial court erred when it dismissed [Appellant's] Post Conviction Relief Act petition?

Appellant's Brief at 4 (complete capitalization omitted).

¶ 5 Specifically, Appellant contends that the trial court incorrectly graded the forgery offense as a second-degree felony. *Id.* at 6. He argues that cashier's checks are "commercial instruments" and because the Crimes Code grades forgery of commercial instruments as a third-degree felony, his crime should have been graded accordingly. *Id.* at 7–9.

¶ 6 Initially, we note that Appellant is challenging the legality of his sentence. *See Commonwealth v. Tustin,* 888 A.2d 843, 845 (Pa.Super.2005) (holding that a claim of improper grading of an offense challenges the legality of a sentence). "[T]he determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary." *Commonwealth v. Williams,* 868 A.2d 529, 532 (Pa.Super.2005), *appeal denied,* 586 Pa. 726, 890 A.2d 1059 (2005). "If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated." *Commonwealth v. Stevenson,* 850 A.2d 1268, 1271 (Pa.Su-

---

* Former Justice specially assigned to the Superior Court.

** Retired Senior Judge specially assigned to the Superior Court.

1. 18 Pa.C.S.A. §§ 4101, 4120, 3922, and 903, respectively.

per.2004)(*en banc*) (citation omitted). "Moreover, challenges to an illegal sentence can never be waived and may be reviewed *sua sponte* by this Court." *Commonwealth v. Randal*, 837 A.2d 1211, 1214 (Pa.Super.2003) (*en banc*) (citation and quotations omitted).

¶ 7 "The substantive portion of the forgery statute, which sets forth the elements of the crime, is the same for all grades of forgery."[2] *Commonwealth v. Smith*, 883 A.2d 612, 614 (Pa.Super.2005). "The distinctions in the grading provision of the statute go to the **type** of writing involved." *Id.* (emphasis in original). Specifically, the Crimes Code grades forgery as follows:

> (c) **Grading.**—Forgery is a felony of the second degree if the writing is or purports to be part of an issue of money, securities, postage or revenue stamps, or other instruments issued by the government, or part of an issue of stock, bonds or other instruments representing interests in or claims against any property or enterprise. Forgery is a felony of the third degree if the writing is or purports to be a will, deed, contract, release, commercial instrument, or other document evidencing, creating, transferring, altering, terminating or otherwise affecting legal relations. Otherwise forgery is a misdemeanor of the first degree.

18 Pa.C.S.A. § 4101(c).

¶ 8 Here, the trial court determined that a cashier's check is an issue of money, rather than a commercial instrument. Trial Court Opinion, 12/1/2008, at 8–9. Because a cashier's check is not specifically delineated in the forgery statute, the trial court relied upon the legal definition of a cashier's check, set forth in *Black's Law Dictionary*, in making its determination. *Id.* at 8. Ultimately, it found the offense

was properly graded as a second-degree felony. *Id.* at 8–9.

¶ 9 As set forth above, the forgery grading provision does not specifically enumerate what type of writing a cashier's check constitutes. As such, we must interpret the statute, mindful of the following principles:

> [T]he Statutory Construction Act of 1972 ("Act") ... 1 Pa.C.S.A. § 1501 *et seq* ... instructs, in relevant part that, the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly, and [w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S.A. § 1921(a), (b). A court should resort to other considerations, such as the General Assembly's purpose in enacting a statute, only when the words of a statute are not explicit. 1 Pa.C.S.A. § 1921(c). The Act also provides that [w]ords and phrases shall be construed according to the rules of grammar and according to their common and approved usage, but that technical words and phrases and such others as have acquired a peculiar and appropriate meaning ... shall be construed according to such peculiar and appropriate meaning. 1 Pa.C.S.A. § 1903(a). Finally, in ascertaining the General Assembly's intent, we may presume that the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable. 1 Pa.C.S.A. § 1922(1).

*Commonwealth v. Diamond*, 945 A.2d 252, 256 (Pa.Super.2008)(quotations omitted), *appeal denied*, 598 Pa. 755, 955 A.2d 356 (2008).

---

**2.** The elements of the crime of forgery are not at issue instantly.

¶ 10 Our recent decision in *Commonwealth v. Pantalion*, 957 A.2d 1267 (Pa.Super.2008) is instructive. Therein, a defendant challenged the grading of forgery of money orders as a second-degree felony that, like a cashier's check, is not defined in the forgery grading provision. In *Pantalion*, we determined that writings that qualified as second-degree forgery felonies are those with "intrinsic value." *Id.* at 1273 (citation omitted). Relying on the Model Penal Code, we found that "the second-degree felony grading was intended to apply to 'documents which require special expertise to execute, which can readily be the means of perpetrating widespread fraud, and the forgery of which can undermine confidence in the widely circulating instruments representing wealth.'" *Id.*, *citing* Model Penal Code § 224.1, Explanatory Note.

¶ 11 We ultimately determined that

[w]ith respect to money orders, they are instruments to facilitate the transmission of money. A money order is drawn by the issuer upon itself and issued to the purchaser as evidence that the issuer has received a specified sum of money from the purchaser and agrees to pay that sum to the payee or holder of the money order. Money orders qualify as negotiable instruments pursuant to the Commercial Code. As such, a money order is a financial document which contains an unconditional promise or order to pay a sum certain in money and is payable on demand to the bearer. A money order may be presented in exchange for cash. It may also be used to purchase goods at a commercial establishment. Because of their intrinsic monetary value, money orders can readily be the means of perpetrating widespread fraud, and the forgery of money orders can undermine confidence in these instruments for transmission of money.

*Id.* at 1273–74 (citations and quotations omitted).

¶ 12 "In contrast, documents compromising third-degree felonies are writings which create or otherwise affect legal relations." *Id.* at 1273 (citation omitted). Examples of cases involving third-degree forged writings include, but are not limited to, the following: *Commonwealth v. Ryan*, 909 A.2d 839 (Pa.Super.2006) (building permits); *Commonwealth v. Lenhoff*, 796 A.2d 338 (Pa.Super.2002) (gun applications); *Commonwealth v. Sargent*, 823 A.2d 174 (Pa.Super.2003) (credit card receipts); and *Commonwealth v. Sneddon*, 738 A.2d 1026 (Pa.Super.1999) (cash register receipts).

¶ 13 A cashier's check is defined by the Commercial Code as "a draft with respect to which the drawer and drawee are the same bank or branches of the same bank." 13 Pa.C.S.A. § 3104(g). Similarly, *Black's Law Dictionary* defines a cashier's check as:

A bank's own check drawn on itself and signed by the cashier or other authorized official. **It is a direct obligation of the bank**. One issued by an authorized officer of a bank directed at another person, evidencing that the payee is authorized to demand and receive upon presentation from the bank the amount of money represented by the check. A form of a check by which the bank lends its credit to the purchaser of the check, **the purpose being to make it available for immediate use in banking circles**. A bill of exchange drawn by a bank upon itself, and accepted by the act of the issuance. In its legal effect, it is the same as a certificate of deposit, certified check or draft.

BLACK'S LAW DICTIONARY 237 (6th ed. 1990) (emphasis added); *see also id.* at 217.

¶ 14 Here, Appellant pled guilty to forging cashier's checks in return for thousands of dollars of cash. Because a bank is directly obligated to make payment on a cashier's check upon demand to facilitate immediate funds for use in banking circles, and based on our holding in *Pantalion,* we conclude that cashier's checks are items of "intrinsic value" similar in form and function to money orders. Like money orders, cashier's checks "can readily be the means of perpetrating widespread fraud" and the forgery of cashier's checks "can undermine confidence in these instruments for transmission of money."[3] *Pantalion,* 957 A.2d at 1274.

¶ 15 Additionally, we note that Appellant's reliance on our decision in *Commonwealth v. Muller,* 334 Pa.Super. 228, 482 A.2d 1307 (1984) is misplaced. In that case, we determined that forged personal checks were commercial instruments and graded as third-degree felonies. As explained in detail above, cashier's checks are issued by the bank while personal checks are not. A bank guarantees funds when issuing a cashier's check; as such, the issuance is akin to the transmission of money. In contrast, a personal check is subject to verification of available funds before release, thereby making it a commercial instrument. *Muller,* 482 A.2d at 1311, *citing* 13 Pa.C.S. § 3104(b) and (c). For all of the foregoing reasons, we conclude that the trial court in this case properly graded the forgery offense as a second-degree felony and Appellant is not entitled to collateral relief.

¶ 16 Order affirmed.

¶ 17 FITZGERALD, J., files a Dissenting Opinion.

## DISSENTING OPINION BY FITZGERALD, J.:

¶ 1 I respectfully dissent from the reasoned analysis of the learned majority. The majority concludes that under the grading subsection of the forgery statute, a "cashier's check" is an "issue of money". Majority Op. at ¶ 15. The majority defines an "issue of money" as equivalent to an item of intrinsic monetary value that is both capable of perpetuating widespread fraud and, if forged, would actually undermine confidence in that instrument for transmitting money. Majority Op. at ¶ 14. The majority submits that a cashier's check is not a commercial instrument because a bank issues a cashier's check, un-

---

3. Moreover, while certainly not binding, we are persuaded by the following rationale:

Cashier's checks are used and, in fact, are often requested because they, unlike cash, checks, or other negotiable instruments, do not carry the normal risks of loss, counterfeit, litigation, or insolvency inherent in those other instruments. A cashier's check is the bank's obligation rather than the drawer's personal obligation. Therefore, people accept a cashier's check as a substitute because they trust the bank's obligation and believe it to be almost unshakable. This general belief in the validity of cashier's checks shows the credit substitution function for which they are used. The bottom line to a person's request to be paid by a cashier's check is that person's belief that receipt of the cashier's check should remove all doubt as to whether it will be returned because of insufficient funds in the drawer's account, a stop-payment order, the drawer's insolvency, or any other reason. The bank's obligation releases the recipient of a cashier's check from these concerns.

Other attributes of cashier's checks are that they provide increased acceptability, they are less vulnerable to the risks of loss and theft, and persons without checking accounts often use cashier's checks when they do not want to pay cash.

Douglas J. Landy, *Failure of Consideration is Not a Defense to a Bank's Refusal to Pay a Cashier's Check: Revised UCC § 3–411(c),* 115 Banking L.J. 92, 102 (1998)(footnotes omitted).

like a personal check. Majority Op. at ¶ 15. Further, the majority suggests that unlike a personal check, a bank guarantees the funds when issuing a cashier's check, which is akin to the transmission of money. *Id.* On that basis, the majority distinguishes *Commonwealth v. Muller*, 334 Pa.Super. 228, 482 A.2d 1307 (1984), which held that forgery of a bank check was a third-degree felony because a bank check is a commercial instrument. In my view, we are bound by *Muller*, and I would conclude a cashier's check is more akin to a commercial instrument.

¶ 2 I adhere to the following in interpreting a statute:

> The [Statutory Construction] Act is clear that the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the legislature. Generally, the best indication of the General Assembly's intent is the plain language of the statute. When the words of a statute are clear and unambiguous, there is no need to look beyond the plain meaning of the statute under the pretext of pursuing its spirit. Consequently, only when the words of a statute are ambiguous should a court seek to ascertain the intent of the General Assembly through consideration of statutory construction factors found in [1 Pa.C.S. § ] 1921(c).
>
> Additionally, penal statutes are to be strictly construed. Yet, the need for strict construction does not require that the words of a penal statute be given their narrowest meaning or that legislative intent should be disregarded. It does mean, however, that, if an ambiguity exists in the verbiage of a penal statute, such language should be interpreted in the light most favorable to the accused. More specifically, where doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt. Finally, the Crimes Code itself supplies guidance as to the construction of the provisions of the Code: The provisions of this title shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title and the special purposes of the particular provision involved.

*Commonwealth v. Fithian*, 599 Pa. 180, 194–95, 961 A.2d 66, 73–74 (2008) (punctuation and citations omitted). "General words shall be construed to take their meanings and be restricted by preceding particular words." 1 Pa.C.S. § 1903(b). The plain meaning of words may be discerned by referring to a dictionary. *Commonwealth v. McCoy*, 599 Pa. 599, 611, 962 A.2d 1160, 1166–67 (2009). Punctuation may be used to construe the statute but cannot override or otherwise affect the legislative intent. 1 Pa.C.S. § 1923(b).

¶ 3 The forgery statute states:

> **(b) Definition.**—As used in this section, the word "writing" includes printing or any other method of recording information, money, coins, tokens, stamps, seals, credit cards, badges, trademarks, electronic signatures and other symbols of value, right, privilege, or identification.
>
> **(c) Grading.**—Forgery is a felony of the second degree if the writing is or purports to be part of an issue of money, securities, postage or revenue stamps, or other instruments issued by the government, or part of an issue of stock, bonds or other instruments representing interests in or claims against any property or enterprise. Forgery is a felony of the third degree if the writing is or purports to be a will, deed, contract, release, commercial instrument, or other document

evidencing, creating, transferring, altering, terminating or otherwise affecting legal relations. Otherwise forgery is a misdemeanor of the first degree.

18 Pa.C.S. § 4101.

¶ 4 In *Muller*, this Court held that a bank check was a commercial instrument, citing to the version of 13 Pa.C.S. § 3104(b) and (c) in existence at that time:

**§ 3104. Form of negotiable instruments; "draft"; "check"; "certificate of deposit"; "note"**

(a) **Requisites to negotiability.**— Any writing to be a negotiable instrument within this division must:

(1) be signed by the maker or drawer;

(2) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this division;

(3) be payable on demand or at a definite time; and

(4) be payable to order or to bearer.

(b) **Types of negotiable instruments.**—A writing which complies with the requirements of this section is:

(1) A "draft" ("bill of exchange") if it is an order.

(2) A "check" if it is a draft drawn on a bank and payable on demand.

(3) A "certificate of deposit" if it is an acknowledgment by a bank of receipt of money with an engagement to repay it.

(4) A "note" if it is a promise other than a certificate of deposit.

(c) **Applicability of terms to nonnegotiable instruments.**—As used in other divisions of this title, and as the context may require, the terms "draft," "check," "certificate of deposit" and "note" may refer to instruments which are not negotiable within this division as well as to instruments which are so negotiable.

13 Pa.C.S. § 3104 (repealed 1993). The *Muller* Court held:

We believe it safe to conclude, absent any case law, that a bank check would be considered a commercial instrument under this section. *See* 13 Pa.C.S. § 3104(b), (c) (defining check as instrument). Appellant's forgery of bank checks amounted to only a third degree felony, not a second degree felony as was stated.

*Muller*, 482 A.2d at 1311. The *Muller* Court equated the term "negotiable instrument," as defined in the Commonwealth's then-codification of the Uniform Commercial Code, with the term "commercial instrument." *Id.*[1]

¶ 5 The negotiable-instrument statute presently states:

**§ 3104. Negotiable instrument**

(a) **Definition of "negotiable instrument".**—Except as provided in subsections (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

---

1. I understand the *Muller* Court as examining whether a bank check fell within the statutory language of a commercial instrument. The *Muller* Court did not examine whether the bank check at issue was a personal check. I also observe that although not dispositive of the issue, the Pennsylvania Supreme Court noted that a defendant who forged a signature on a check was convicted of forgery, a felony of the third degree. *Commonwealth v. Goldhammer*, 512 Pa. 587, 589–90, 517 A.2d 1280, 1281–82 (1986).

(1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(2) is payable on demand or at a definite time; and

(3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain:

(i) an undertaking or power to give, maintain or protect collateral to secure payment;

(ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral; or

(iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

**(b) Definition of "instrument".—** "Instrument" means a negotiable instrument.

**(c) Negotiable instrument and check.—**An order that meets all of the requirements of subsection (a), except paragraph (1), and otherwise falls within the definition of "check" in subsection (f) is a negotiable instrument and a check.

**(d) When promise or order not an instrument.—**A promise or order other than a check is not an instrument if, at the time it is issued or first comes into possession of a holder, it contains a conspicuous statement, however expressed, to the effect that the promise or order is not negotiable or is not an instrument governed by this division.

**(e) Note and draft.—**An instrument is a "note" if it is a promise and is a "draft" if it is an order. If an instrument falls within the definition of both "note" and "draft," a person entitled to enforce the instrument may treat it as either.

**(f) Definition of "check".—**"Check" means:

(1) a draft, other than a documentary draft, payable on demand and drawn on a bank; or

(2) a cashier's check or teller's check.

An instrument may be a check even though it is described on its face by another term, such as "money order."

**(g) Definition of "cashier's check".—**"Cashier's check" means a draft with respect to which the drawer and drawee are the same bank or branches of the same bank.

13 Pa.C.S. § 3104 (replacing 13 Pa.C.S. §§ 3104, 3112 (1979)).

¶ 6 This Court has examined other types of writings in determining whether forgery is of the second or the third degree. In *Commonwealth v. Sneddon*, 738 A.2d 1026 (Pa.Super.1999), the Court examined a cash register receipt. A receipt may permit the buyer to obtain "a refund of monies, a store credit, or goods in kind" from the seller. *Id.* at 1028. The *Sneddon* Court held that a cash register receipt is a writing evidencing a legal transaction, specifically a sale of goods between a buyer and seller. *Id.* Because altering a receipt to receive a refund in excess of the value of the merchandise originally purchased is equivalent to altering a writing evidencing a legal transaction, the Court affirmed the defendant's conviction of forgery of the third degree. *Id.*

¶ 7 The Court employed a similar analysis in *Commonwealth v. Sargent*, 823 A.2d 174 (Pa.Super.2003). In *Sargent*, the defendant signed the victim's name to a credit card receipt without the intent to pay for the purchased merchandise. *Id.* at 175. The Court held that by forging the victim's signature, the defendant created a legal relationship between the victim and the seller and altered a prior legal relationship

between the victim and the credit card company. *Id.* at 176. Thus, the Court affirmed the defendant's conviction for forgery of the third degree. *Id.* at 177.

¶ 8 In *Commonwealth v. Lenhoff,* 796 A.2d 338 (Pa.Super.2002), the defendant signed another person's name on an application for the legal right to purchase a firearm. *Id.* at 339. The defendant pleaded guilty to second-degree forgery, but filed a successful post-trial motion requesting that the court change the grading to third-degree felony. *Id.* at 340. The defendant appealed, arguing that the crime should be graded a first-degree misdemeanor. *Id.* The *Lenhoff* Court held that "the gun application was a document that affected his legal relation with this Commonwealth," and therefore the defendant committed at least a third-degree felony. *Id.* at 341.[2]

¶ 9 In *Commonwealth v. Ryan,* 909 A.2d 839 (Pa.Super.2006), the defendant entered a contract with a motel for some repair work. *Id.* at 840. The motel owner requested certification of the work by the township zoning officer prior to final payment. *Id.* The defendant gave the motel owner a forged document containing the signature of the zoning officer. *Id.* The zoning officer complained, and the defendant was ultimately convicted of forgery, specifically uttering a writing known to be forged. *Id.* at 841. The defendant challenged the grading of the offense as a second-degree felony. *Id.* The *Ryan* Court held:

> [W]e conclude that a forged building permit is not the type of document the legislature intended to comprise a felony of the second degree. Although the permit purports to be issued by Franklin Township in Greene County, a govern-

ment agency, it is different in kind and class from the documents enumerated in Section 4101(c) as qualifying for a felony two designation. Unlike money, securities, postage, revenue stamps, stocks, and bonds, a permit has no intrinsic value. Rather, it is a license to do something, in this case, build or alter a structure. Further, under the statutory construction doctrine of *ejusdem generis,* the reference in the statute to "other instruments issued by the government" must be limited to instruments of the same general nature or class as those preceding the phrase—that is, instruments with intrinsic value. Again, a permit has no intrinsic value.

Moreover, this conclusion is supported by the commentary to Section 224.1 of the Model Penal Code, on which Section 4101 is based and to which Section 4101(c), in particular, is identical. *See* 18 Pa.C.S.A § 4101, Historical and Statutory Notes; Model Penal Code § 224.1. The commentary states that the second-degree felony grading was intended to apply to "documents which require special expertise to execute, which can readily be the means of perpetrating widespread fraud, and the forgery of which can undermine confidence in widely circulating instruments representing wealth." Model Penal Code § 224.1, Explanatory Note. The forged building permit in this case does not match this description. For all these reasons, we find that the trial court erred in concluding that a building permit fell within the felony two class of writings, and thus erred in grading [the defendant's] forgery offense as a second-degree felony. *Id.* at 842–43. Thus, the *Ryan* Court vacated the judgment of sentence for forgery

---

**2.** The Court, however, vacated the defendant's guilty plea because "the offense was graded incorrectly on the criminal complaint, during the plea negotiations, and at the plea colloquy." *Id.*

as a felony of the second degree, and remanded for resentencing as a felony of the third degree. *Id.* at 845.

¶ 10 Forging a graduate school degree and professional license, and submitting them to obtain employment, is not a third-degree forgery, however. *Commonwealth v. Smith*, 883 A.2d 612, 613 (Pa.Super.2005). The *Smith* Court reasoned:

Clearly the forging of those documents resulted in the [defendant's] hiring and his termination; that fact, however, does not mean the documents are legal documents or documents affecting legal relations.

The reason for imposing a higher penalty for legal writings or documents evidencing a legal relationship, such as a contract, will, deed, or stock certificate, is directly related to the rights, monetary and otherwise, that are created by those writings, the need to protect those rights, and the value and symbolism our society imposes upon those documents. The documents in this case did not create a legal relationship or obligate either party to perform pursuant to that relationship.

*Id.* at 615–16. Because the trial court convicted the defendant of a third-degree forgery, the *Smith* Court remanded for resentencing as a first-degree misdemeanor. *Id.* at 616.

¶ 11 Most recently, as the majority notes, this Court held that a forgery of a postal money order was a second-degree felony. *Commonwealth v. Pantalion*, 957 A.2d 1267, 1270 (Pa.Super.2008). The *Pantalion* Court, although acknowledging that the Pennsylvania Commercial Code defines a money order as a negotiable instrument, concluded that a United States Postal Service money order was a writing with intrinsic value. *Id.* at 1274. "Because of their intrinsic monetary value, money orders can readily be the means of perpetrating widespread fraud, and the forgery of money orders can undermine confidence in these instruments for transmission of money." *Id.* Thus, the *Pantalion* Court held that a money order issued by the United States Postal Service was the equivalent of an issue of money by the government for purposes of grading. *Id.*

¶ 12 Instantly, Appellant claims that a cashier's check is a commercial instrument for purposes of the grading subsection. Simply, I discern the question as whether a "writing", *i.e.*, a "cashier's check," is: (1) "part of an issue of money, securities, postage or revenue stamps, or other instruments issued by the government"; (2) "part of an issue of stock, bonds or other instruments representing interests in or claims against any property or enterprise"; (3) "a will, deed, contract, release, commercial instrument, or other document evidencing, creating, transferring, altering, terminating or otherwise affecting legal relations"; or (4) none of the above. *See* 18 Pa.C.S. § 4101(c).

¶ 13 I begin with the plain language of the statute. *See Fithian*, 599 Pa. at 194, 961 A.2d at 73–74. Because the forgery statute defines no term other than "writing," we refer to a dictionary for the definition of "commercial instrument". *See McCoy*, 599 Pa. at 611, 962 A.2d at 1166–67. Black's Law Dictionary defines a "commercial instrument" as "commercial paper." BLACK'S LAW DICTIONARY 245 (5th ed. 1979). "Commercial paper" is defined as:

[S]hort-term negotiable instruments (as bills of exchange, checks, and promissory notes) arising out of commercial transactions; *esp:* instruments constituting direct obligations of business firms that are sold through note brokers to banks, corporations, and other investors seeking liquid investments

Webster's Third New International Dictionary 457 (1986). Similarly:

1. An instrument, other than cash, for the payment of money. ● Commercial paper—typically existing in the form of a draft (such as a check) or a note (such as a certificate of deposit)—is governed by Article 3 of the UCC. But even though the UCC uses the term *commercial paper* when referring to negotiable instruments of a particular kind (drafts, checks, certificates of deposit, and notes as defined by Article 3), the term long predates the UCC as a business and legal term in common use. Before the UCC, it was generally viewed as synonymous with *negotiable paper* or *bills and notes*. It was sometimes applied even to nonnegotiable instruments.

BLACK'S LAW DICTIONARY 1143 (9th ed. 2004); see BLACK'S LAW DICTIONARY 245 (5th ed. 1979); BALLENTINE'S LAW DICTIONARY (3d ed. 1969) ("1. Negotiable instruments, drafts, checks, certificates of deposit, and promissory notes. The term also includes bearer bonds where such are not specifically excluded from the classification by statute. 2. The Uniform Commercial Code classifies paper in commercial transactions as 'money paper,' which is 'commercial paper,' 'investment paper,' and 'commodity paper.' ").[3] Thus, it is evident that the plain and commonly understood term of "commercial instrument" encompasses checks, including the cashier's check at issue. *See Muller*, 482 A.2d at 1311.[4]

¶ 14 I further observe that the Pennsylvania Commercial Code defines a "cashier's check" as simply a "check." *See* 13 Pa.C.S. § 3104(f), (g) (defining "check" as including "cashier's check"); *Muller*, 482

---

**3.** *See also* THE LAW DICTIONARY (2002) (defining "commercial paper" as "negotiable instruments (*q.v.*), *e.g.*, checks and promissory notes."); MODERN DICTIONARY FOR THE LEGAL PROFESSION (3d ed. 2001) (defining "commercial paper" as "Document which represents money such as a check, certificate of deposit, or promissory note."); *see generally* A DICTIONARY OF MODERN LEGAL USAGE (1990) ("*Commercial paper* is now the more widely used term in the U.S. because of its use in article three of the Uniform Commercial Code. As to the precise distinction, *commercial paper* is the broader term: it may include nonnegotiable as well as negotiable paper, whereas negotiable instruments are by definition negotiable ones only.") (italics in original).

**4.** Although not dispositive, I observe that many other states have apparently adopted, in whole or in part, Model Penal Code 224.1, and concluded that a check is a commercial instrument. *See* Ala.Code § 13A-9-3 (1979) (forging a commercial instrument, which includes a check, is forgery of lesser degree); Alaska Stat. § 11.46.505 (1978) (referenced in *Hemphill v. State*, 673 P.2d 888, 889 (Alaska Ct.App.1983), which involved forged check); Ark.Code Ann. § 5-37-201 (1987) (commercial instrument encompasses check; forging check is felony of lesser degree); Colo.Rev. Stat. § 18-5-102 (2004) (instrument evidencing or creating legal obligation includes check); Conn. Gen.Stat. § 53a-139 (1976) (referenced in *State v. Henderson*, 47 Conn. App. 542, 706 A.2d 480, 485 (1998), implicitly noting commercial instrument includes check; forging check is felony of lesser degree); Del.Code Ann. tit. 11, § 861 (1995) (instrument evidencing or creating legal obligation includes check; forging check is felony of lesser degree); Haw.Rev.Stat. § 708-852 (1997) (cited by *State v. Baker*, 55 Haw. 621, 525 P.2d 571, 571-72 (1974), equating check with commercial instrument; forging commercial instrument is felony of lesser degree); Ky.Rev.Stat. Ann. § 516.030 (1974) (cited by *Jones v. Com.*, 662 S.W.2d 483, 484 (Ky.Ct. App.1983), in finding check is form of commercial instrument); N.Y. Penal Law § 170.10 (1998) (interpreted by *People v. Hayes*, 133 A.D.2d 934, 520 N.Y.S.2d 650, 651 (1987), in holding check is commercial instrument; statute provides forging of commercial instrument is felony of lesser degree); *cf.* N.H.Rev.Stat. 638:1 (1992) (check is instrument representing pecuniary claim); Utah Code Ann. § 76-6-501 (2007) (same). *But cf.* Iowa Code § 715A.2 (2003) (distinguishing check and commercial instrument for grading of crime).

A.2d at 1311. Because the *Muller* Court relied on 13 Pa.C.S. § 3104 in concluding that forgery of a bank check was a third-degree felony, I would similarly conclude, based on the present version of § 3104, that forgery of a cashier's check is a third-degree felony.[5]

¶ 15 Conversely, I am unable to conclude that the statutory language classifying forgery as a second-degree felony encompasses a cashier's check. Initially, I agree with the majority's implicit conclusion that a cashier's check is not a "securit[y], postage or revenue stamp[ ], or other instrument[ ] issued by the government, or part of an issue of stock, bonds or other instrument[ ] representing interests in or claims against any property or enterprise." *See* 18 Pa.C.S. § 4101(c). With respect to the remaining clause of "issue of money," because the forgery statute does not define it, I resort to the dictionary. *See McCoy,* 599 Pa. at 611, 962 A.2d at 1166–67.

¶ 16 Issue is defined as "way out, exit, proceeds." *See* Webster's Third New International Dictionary 1201 (1986). Issue is also defined as:

> **5 a:** to appear or become available through being officially put forth or distributed or granted or proclaimed or promulgated: appear through issuance ... **b:** to appear or become available through being brought out for distribution to or sale or circulation among the public: appear through publication ... **c:** to go forth by authority ...

*Id.* (examples omitted). "Money" is defined as follows:

> **1:** something generally accepted as a medium of exchange, a measure of value, or a means of payment ... as **a:** officially coined or stamped metal currency **b:** MONEY OF ACCOUNT ... **c:** coinage or negotiable paper issued as legal tender by a recognized authority ...

*Id.* at 1458 (examples omitted).

¶ 17 I would interpret "issue of money" as an official distribution to the public of currency. *See id.; see also* U.S. Const. art. I, §§ 8, 10. A cashier's check, however, is a "check drawn by a bank upon its own funds and signed by the cashier." *See* Webster's Third New International Dictionary 346 (1986); *see also* 13 Pa.C.S. § 3104; Majority Op. at ¶ 13. I am unable to conclude that the commonly understood meaning of "issue of money" encompasses or otherwise could be construed to include a "cashier's check." *See Fithian,* 599 Pa. at 194–95, 961 A.2d at 73–74.[6] I would have found this matter controlled by *Muller. See Muller,* 482 A.2d at 1311. Thus, I cannot join the majority's rationale.

¶ 18 Further, if altering or forging a signature to a receipt is a third-degree felony, then forging a signature to a cashier's check should also be a third-degree felony because both the receipt and the cashier's check create or otherwise evidence a legal transaction. *See Sargent,* 823 A.2d at 175–76; *Sneddon,* 738 A.2d at 1028. Analogously, if signing another person's name on an application for the legal right to purchase a firearm is a third-degree felony because it affects a person's

---

5. I acknowledge that the *Pantalion* Court held that a money order was a negotiable instrument, *see Pantalion,* 957 A.2d at 1274, and the plain language of "commercial instrument" encompasses negotiable instruments. Thus, the language of the forgery statute would appear to be in some tension with the *Pantalion* Court's holding. Regardless, I would con-
clude that a cashier's check, particularly in light of commonly used definitions, is more akin to a personal check than a money order.

6. Although the majority's rationale supports a more severe punishment for forging a cashier's check, I suggest we cannot look beyond clear and unambiguous statutory language.

legal relation with the Commonwealth, then forging a signature to a cashier's check should also be a third-degree felony because the Commonwealth imposes a legal obligation upon the issuer to pay. *See Lenhoff,* 796 A.2d at 341. For these reasons, I am unable to reconcile the majority's analysis that a "cashier's check" is an "issue of money," when it is also a document creating and otherwise affecting legal relations.

¶ 19 In addition to being a "commercial instrument," I note that the majority concedes that a "cashier's check" is also a "document ... evidencing, creating ... or otherwise affecting legal relations." 18 Pa.C.S. § 4101(c). As the majority aptly emphasizes, a "cashier's check" is a "direct obligation of the bank." Majority Op. at ¶ 13 (quoting BLACK'S LAW DICTIONARY 237 (6th ed. 1990)). Indeed, the Pennsylvania Commercial Code imposes liability if an issuer refuses to pay:

§ 3412. **Obligation of issuer of note or cashier's check**

The issuer of a note or cashier's check or other draft drawn on the drawer is obliged to pay the instrument according to its terms at the time it was issued or, if not issued, at the time it first came into possession of a holder, or if the issuer signed an incomplete instrument, according to its terms when completed, to the extent stated in sections 3115 (relating to incomplete instrument) and 3407 (relating to alteration). The obligation is owed to a person entitled to enforce the instrument or to an indorser who paid the instrument under section 3415 (relating to obligation of indorser).

13 Pa.C.S. § 3412. The Code also sets forth the penalties for an issuer's failure to honor a cashier's check. *See* 13 Pa.C.S. § 3411. Thus, pursuant to the Code, a cashier's check creates and evidences a legal relation between the issuer and the drawer. *See* 13 Pa.C.S. § 3412. I am unable to harmonize the majority's acceptance of a cashier's check as a direct obligation of the bank and simultaneous rejection of a cashier's check as a document evidencing, creating, or otherwise affecting legal relations. *See* 18 Pa.C.S. § 4101(c).

¶ 20 Even if I were to conclude the forgery grading subsection was ambiguous such that a cashier's check could be construed as either an "issue of money" or a "commercial instrument," I would construe such ambiguity in Appellant's favor. *See Fithian,* 599 Pa. at 194–95, 961 A.2d at 73–74. I would therefore find that Appellant's forging of a cashier's check is a felony of the third degree, not of the second degree. *See id.* For these reasons, I respectfully dissent.