J. A34014/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| PATRICK McLOUGHLIN, | : | No. 743 MDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, April 1, 2014,
in the Court of Common Pleas of Lebanon County
Criminal Division at No. CP-38-CR-0001088-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| PATRICK McLOUGHLIN, | : | No. 969 MDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, May 13, 2014,
in the Court of Common Pleas of Lebanon County
Criminal Division at No. CP-38-CR-0001088-2013

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND STABILE, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MAY 20, 2015**

Patrick McLoughlin appeals, **_pro se_**, from the judgment of sentence

imposed in the Court of Common Pleas of Lebanon County.

The facts, as aptly summarized by the trial court, are as follows:

> DEFENDANT's charges stem from an incident
> that occurred overnight on Saturday, June 15, 2013

in front of the residence located at 430 Locust Street in Lebanon. Alane Steif (hereafter "STEIF") is the owner of the residence. Her boyfriend, Lamont Stanley (hereafter "VICTIM"), was spending the night at the residence while she was out of town. (N.T. 6, 20). VICTIM's vehicle -- a unique 2004 White Jaguar X-type -- was parked outside of the residence overnight. (N.T. p. 6.) When VICTIM returned to his car on Monday, June 17, he noticed that someone had scratched the side of his vehicle with a sharp object. (N.T. 6, 12).

As a result of prior vandalism, VICTIM and STEIF installed two video cameras on the front of the residence in January of 2013. (N.T. 14-15). The video consists of two channels that correspond to the two cameras in front of STEIF's house. (N.T. 8). The first channel shows two individuals "walking off" past VICTIM's vehicle on June 15, 2013 at approximately 3:25 a.m. (N.T. 9). After they pass, the vehicle shows scratches on its side caused by "some sort of sharp object." (N.T. 9). The second channel shows a front view of the individuals approaching the vehicle. (N.T. 8). The video is dark and it is difficult to discern the facial characteristics of the individuals in the video. However, the video clearly depicts one of the men "keying" the victim's vehicle.

A Summary Hearing was held on April 1, 2014. At the Hearing, VICTIM identified the two men as DEFENDANT and his son, Alan McLoughlin. (N.T. 8). VICTIM admitted that he had never actually met DEFENDANT. (N.T. 10). However, he testified that he was able to identify DEFENDANT because he had seen DEFENDANT drive by him on numerous occasions. (N.T. 11). More importantly, DEFENDANT's son, Alan McLoughlin, dated STEIF for approximately six and a half years. (N.T. 11, 22). VICTIM explained that STEIF had shown him pictures of DEFENDANT in the past. (N.T. 11).

STEIF also identified DEFENDANT and his son as the two individuals in the video. (N.T. 22, 26).

She explained that she spent a significant amount of time with DEFENDANT during her long relationship with his son, Alan. (N.T. 22). She explained that Alan lived with her at the 430 Locust Street residence for a few years, and DEFENDANT visited them several times a week. (N.T. 22).

STEIF testified that she was able to identify DEFENDANT because he has a very distinct walk resulting from various knee and toe injuries. (N.T. 23). From a side profile view, she could identify the man in the video as DEFENDANT "from the nose, the ears, the clothes that he wears, [and] the way he rolled his shirt." (N.T. 23-24). She explained that he "has slightly larger ears," (N.T. 25), and "he always had a baseball cap on." (N.T. 23-24). She testified that the hat worn by the individual in the video is consistent with the hat that DEFENDANT frequently wore -- a black hat with the word "Ireland" in green print. (N.T. 31, 44). She proclaimed that she had "no doubt in [her] mind" that DEFENDANT was the man in the surveillance video. (N.T. 23-24). Similarly, she was able to identify Alan because the second man in the video moved "exactly the way Alan moves back and forth" when he walks. (N.T. 26).

Prior to the June 15, 2013 incident, there was some animosity between STEIF and DEFENDANT. At some point prior to the incident, DEFENDANT filed a civil action against STEIF for $20,000.00 worth of renovations he made to the 430 Locust Street property. (N.T. 14, 37). STEIF testified that she was not aware of anyone else other than DEFENDANT or his son Alan that would have a motive to damage or destroy her property or the property of her boyfriend. (N.T. 31).

DEFENDANT proclaimed his innocence throughout the Hearing. He testified that he did not recognize either of the men in the surveillance video, and at the time of the vandalism, he was in his home at 501 East Kline Avenue. (N.T. 38-39). DEFENDANT explained that he is very sick, and

- 3 -

suffers from leukemia, Archer's Disease, and high blood pressure. (N.T. 35). He explained that he takes certain medication for his ailments that may only be taken at night, and that he has not been outside of his house at night after 9:00 p.m. for the last year and a half. (N.T. 39). We note that DEFENDANT's residence is approximately one mile from STEIF's home. (N.T. 41). Further, there is a bar located around the corner from STEIF's residence. (N.T. 43).

DEFENDANT was initially charged with misdemeanor Criminal Mischief on June 24, 2013. We conducted a bench trial on this charge on April 1, 2014. Following testimony, we determined that DEFENDANT was in fact the culprit who damaged the victim's vehicle. However, because the Commonwealth did not establish the monetary extent of VICTIM's damages, this Court found DEFENDANT guilty of the summary offense of Criminal Mischief. During sentencing, VICTIM presented a claim for restitution in the amount of $1,598.22. Since this value far exceeded the statutory limit for the grading of Criminal Mischief as a Summary Offense, we concluded that the maximum amount to which VICTIM was entitled to receive for the summary offense was the statutory limit of $500.00. Immediately following trial, we sentenced DEFENDANT to pay the costs of prosecution, a fine of $100.00, and restitution in the amount of $500.00. We advised the Commonwealth that it could file a Motion for Modification of Sentence within 10 days if it could provide case law supporting its claim that VICTIM should be awarded $1,598.22 in restitution.

The Commonwealth filed their Motion for Modification of Sentence on April 10, 2014, citing the case of **Commonwealth v. Wright**, 722 A.2d 157 (Pa. Superior Ct. 1998). We issued a Rule to Show Cause upon DEFENDANT giving him an opportunity to oppose the Commonwealth's request for sentence modification. DEFENDANT did not do so. Accordingly, we granted the Commonwealth's Motion

> on May 12, 2014 and awarded restitution to VICTIM in the amount of $1,598.22.  In the interim, DEFENDANT appealed to the Superior Court on April 30, 2014.  DEFENDANT filed a **pro se** Statement of Matters Complained Of on Appeal on May 12, 2014, and he filed amended versions on May 21, 2014 and May 28, 2014.  We author this Opinion pursuant to Pa.R.A.P. 1925 to address DEFENDANT's appeal and explain our reasons for modifying DEFENDANT's sentence.

Trial court opinion, 6/23/14 at 3-7.

On May 20, 2014, the trial court issued an order scheduling a **Grazier**[1] hearing.  On May 21, 2014, appellant filed a **pro se** notice of appeal from the May 13, 2014 order.  (Docket #27.)  Appellant filed an "amended concise statement of matters complained of on appeal," and then on May 28, 2014, he filed a **pro se** "supplement to defendant's amended concise statement of matters complained of on appeal." (Docket #29, 30.)  On May 28, 2014, a **Grazier** hearing was held.

At the outset, we note that appellant's appeal filed on April 30, 2014, was premature.  The Commonwealth had filed a motion for reconsideration, which had not been disposed of by the trial court.  Because the entry of the order disposing of the Commonwealth's motion to modify sentence then becomes the triggering device for the defendant's notice of appeal, appellant's April 30, 2014 notice of appeal from the April 1, 2014 judgment of sentence was premature.  **See** Pa.R.Crim.P. 720, Comment.  Additionally,

---

[1] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

appellant was acting **pro se** and without the knowledge of his counsel who had not yet been granted permission to withdraw. Thus, we dismiss the appeal filed at No. 743 MDA 2014.

We now turn to the appeal properly filed from the May 13, 2014 amended judgment of sentence. Appellant presents the following issues for our review:

1. Whether a poor quality, blurry surveillance video of an unrecognizable person (who was, in fact, not appellant) committing an act of vandalism, along with other evidence disproved by physical facts, is insufficient to prove beyond a reasonable doubt that appellant was guilty of criminal mischief[?]

2. Whether the verdict was against the weight of the evidence where the surveillance video purported to tie defendant to the crime, in fact, showed someone else committing the vandalism[?]

3. Whether the trial court abused its discretion and denied Appellant Due Process by basing its finding of guilt on wrongly assumed facts that were not introduced at trial[?]

4. Whether appellant was denied his Constitutional right to a jury trial when he was tried for a second-degree misdemeanor and did not voluntarily or knowingly waive his right to a jury trial pursuant to Pa.R.Crim.P. 620[?]

5. Whether the Commonwealth attorney committed gross prosecutorial misconduct and overreaching when he intentionally denied Appellant his Constitutional right to a jury trial by dropping the misdemeanor charge, securing a bench-trial based on the lesser, summary charge, and then proceeding to try defendant

on the supposedly-dropped misdemeanor charge and whether retrying Appellant in that situation would violate Double Jeopardy?

6.    Whether the trial court erred by admitting and considering as evidence a private surveillance video that was not properly authenticated[?]

7.    Whether the trial court imposed an illegal sentence that was not supported by the evidence[?]

8.    Whether the trial court failed to adhere to statutory sentencing requirements when it resentenced Appellant without his knowledge or presence[?]

9.    Whether appellant's trial counsel was ineffective in the following respects:

a.    Counsel did not interview or call witnesses who could have testified (1) that Appellant did not own a hat or clothes like those worn by the man in the video and (2) that the man in the video was not Appellant.

b.    Counsel did not object to the admissibility of the video, which was not properly authenticated.

c.    Counsel did not inform Appellant, or object, when the Commonwealth dropped the misdemeanor charge, requested a bench trial, asserted that Appellant no longer had a right to a jury trial, and then tried Appellant on the misdemeanor charge.

d.    Counsel did not inform the trial court that Appellant requested a jury trial or request that Appellant

be colloquyed [sic]. He did not even inform Appellant that he was entitled to a jury trial since the trial was on the misdemeanor charge.

e. Counsel failed to request that Judge Charles recuse himself after Appellant informed counsel that Judge Charles was biased against him, based on earlier experiences with the Judge.

f. Counsel did not submit for the Court's consideration numerous character letters in his possession.

g. Counsel did not challenge Appellant's conviction as against the weight of the evidence even though the video showed someone other than Appellant committing the crime.

h. Counsel did not notify Appellant that the Commonwealth had filed a notice to modify sentence, or that the Court had granted a "Motion for Rule to Show Cause" and ordered counsel to respond to the Commonwealth's motion by May 5, 2014.

i. Counsel lied to Appellant, representing that he would file an answer to the Commonwealth's Motion to Modify, and then, inexplicably, never filed one. With no answer on Appellant's behalf, the Court granted the Commonwealth's Motion to Modify Sentence in response to a Commonwealth "Motion to Make Rule Absolute."

> j. Counsel failed to object to or preserve the issues raised by Appellant for the first time on appeal.

Appellant's brief at 6-10.

Appellant's first two issues go to the weight of the evidence. We find this challenge waived for failure to raise it before the trial court, a mandatory requisite to preserve a weight of the evidence challenge for appellate review. Pa.R.Crim.P. 607; ***Commonwealth v. McCall***, 911 A.2d 992 (Pa.Super. 2006). The docket bears no notation showing that appellant filed a post-sentence motion, and a review of the certified record discloses no post-sentence motion filed by appellant raising a weight of the evidence challenge. Furthermore, our review of the notes of testimony reveals that no such motion was made orally after the verdict was rendered. Therefore, this issue has been waived.

To the extent that appellant presents a sufficiency of the evidence claim, we find that no relief is due. There is sufficient evidence to sustain a conviction when the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to enable the fact-finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. ***Commonwealth v. Markman***, 916 A.2d 586, 597 (Pa. 2007). The Commonwealth may sustain its burden "by means of wholly circumstantial evidence." ***Id.*** at 598. Further, we note that the entire trial

record is evaluated and all evidence received against the defendant is considered, being cognizant that the trier of fact is free to believe all, part, or none of the evidence. *Id.*

A person commits criminal mischief when he "intentionally damages real or personal property of another[.]" 18 Pa.C.S.A. § 3304(a)(5). This court has noted that pecuniary damage is not an element of Section 3304; rather, it is a part of the grading of the offense. Hence, pecuniary loss need not be shown where criminal mischief is charged as a summary offense.

Appellant argues that he was not the person involved in the commission of the crime. The trial court, however, concluded he was guilty of criminal mischief based on the surveillance video of the person damaging the victim's car. The court had an opportunity to witness appellant's distinct walk and compare his facial profile on the witness stand to the profile on the video. Additionally, Steif identified appellant as the person in the surveillance video. The evidence, viewed in the light most favorable to the Commonwealth, was sufficient to sustain appellant's conviction for criminal mischief beyond a reasonable doubt.

Appellant next argues that he was denied a constitutional right to a trial by jury. However, there is no right to a trial by jury. *See Commonwealth v. McMullen*, 961 A.2d 842 (Pa. 2008). "The right to a jury trial under the Sixth Amendment to the United States Constitution and Article 1, Sections 6, 9 of the Pennsylvania Constitution applies when a

criminal defendant faces a sentence of imprisonment exceeding six months." ***Id.*** Appellant was charged with a summary offense, the maximum punishment for which is 90 days' incarceration. Therefore, we reject appellant's argument.

We likewise find no merit to appellant's unfounded claim that the district attorney committed gross prosecutorial misconduct when he amended the charge from a misdemeanor to a summary charge.

Appellant's sixth issue avers that the surveillance video should not have been admitted into evidence as it was not properly authenticated. We agree with the Commonwealth that this claim is waived for failure to object to the video's admission during trial. Pa.R.A.P. 302(a); ***Commonwealth v. Blassingale***, 581 A.2d 183, 191 (Pa.Super. 1990).

In his seventh claim, appellant argues that the sentence imposed was illegal and not supported by evidence. (Appellant's brief at 59.) In the context of criminal proceedings, an order of "restitution is not simply an award of damages, but, rather, a sentence." ***Commonwealth v. C.L.***, 963 A.2d 489, 494 (Pa.Super. 2008) (citation omitted). An appeal from an order of restitution based upon a claim that a restitution order is unsupported by the record challenges the legality, rather than the discretionary aspects, of sentencing. ***Commonwealth v. Redman***, 864 A.2d 566, 569 (Pa.Super. 2004), ***appeal denied***, 875 A.2d 1074 (Pa. 2005). "[T]he determination as to whether the trial court imposed an illegal sentence is a question of law;

our standard of review in cases dealing with questions of law is plenary."

***Commonwealth v. Hughes***, 986 A.2d 159, 160 (Pa.Super. 2009) (citation omitted).

Both the Sentencing Code and Crimes Code contain provisions that govern the imposition of restitution. The Sentencing Code provides that "the court shall order the defendant to compensate the victim of his criminal conduct for the damage or injury that he sustained." 42 Pa.C.S.A. § 9721(c). The statute governing restitution for injuries to person or property, 18 Pa.C.S.A. § 1106, provides that:

> **(a)** **General rule.--**Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.
>
> . . . .
>
> (2) At the time of sentencing the court shall specify the amount and method of restitution. In determining the amount and method of restitution, the court:
>
> (i) Shall consider the extent of injury suffered by the victim, the victim's request for restitution as presented to the district attorney in accordance with paragraph (4) and

> > such other matters as it deems appropriate.
>
> . . . .
>
> > (4) (i) It shall be the responsibility of the district attorneys of the respective counties to make a recommendation to the court at or prior to the time of sentencing as to the amount of restitution to be ordered. This recommendation shall be based upon information solicited by the district attorney and received from the victim.

18 Pa.C.S.A. § 1106.

> When fashioning an order of restitution, the lower court must ensure that the record contains the factual basis for the appropriate amount of restitution. ***Commonwealth v. Pleger***, 934 A.2d 715, 720 (Pa.Super.2007). The dollar value of the injury suffered by the victim as a result of the crime assists the court in calculating the appropriate amount of restitution. ***Id.*** The amount of the restitution award may not be excessive or speculative. ***Commonwealth v. Rush***, 909 A.2d 805, 810 (Pa.Super.2006), ***reargument denied***.

***Commonwealth v. Atanasio***, 997 A.2d 1181, 1183 (Pa.Super. 2010).

According to appellant, the trial court ordered him to pay $1,598.22 based on an "unsigned repair estimate the victim provided to the prosecution." (Appellant's brief at 60.) Appellant argues there was no evidence as to the extent of the June 15th damage to the vehicle, and he

points out that the victim acknowledged this was not the first time the vehicle was vandalized; thus, appellant claims there was no representation that this estimate provided only covered damage done to the vehicle on June 15th. (***Id.*** at 60-63.)

We disagree. It is clear from the sentencing hearing transcripts that the court's sentence of restitution was not speculative and finds support in the record. The figure was obtained by the testimony of the victim, and despite appellant's claim to the contrary, we glean nothing speculative about the trial court's calculation. Appellant fails to proffer any authority which would preclude the trial court from relying solely on the victim's calculation of loss where, as in the case before us, the trial court deemed such testimony credible. Accordingly, we conclude that the trial court did not err in the imposition of restitution.

Finally, appellant raises numerous issues regarding the ineffective assistance of trial counsel.[2] However, appellant did not preserve for purposes of Pa.R.A.P. 302(a) the claims of ineffective assistance of counsel by raising the claims in the court below. Thus, these issues have been waived.

---

[2] We find that appellant's claim concerning whether the trial court violated Pa.R.Crim.P. 602 when it modified the restitution amount without his knowledge or an opportunity to be heard is belied by the record. It is also actually raised as a claim of ineffective assistance of counsel; in support of this issue, appellant avers his attorney did not inform him of the matter and "lied" to him. (Appellant's brief at 64-65.)

Furthermore, ineffective assistance of counsel claims are generally deferred to collateral review proceedings, with the exception of certain circumstances not present in the instant case. ***See Commonwealth v. Arrington***, 86 A.3d 831 (Pa. 2014). To be eligible for such relief under the Post Conviction Relief Act ("PCRA"), a petitioner must be currently serving a sentence of imprisonment, probation, or parole. 42 Pa.C.S.A. § 9543(a)(1)(i). As appellant is appealing a summary conviction, for which he was sentenced to pay restitution, we find that he is not eligible for relief under the PCRA. In ***Commonwealth v. Straub***, 936 A.2d 1081 (Pa.Super. 2007), ***appeal denied***, 963 A.2d 470 (Pa. 2009), we held that a defendant convicted of a summary offense and not incarcerated or placed on probation is not entitled to litigate claims of ineffective assistance of counsel on direct appeal even though he may not be eligible for PCRA relief. ***Id.*** at 1083. The ***Straub*** court stated that:

> In light of [***Commonwealth v. O'Berg***, 880 A.2d 597 (Pa. 2005)] majority's express disapproval of the jurisprudential "short sentence" exception to [***Commonwealth v. Grant***, 813 A.2d 726 (Pa. 2002)] and particularly in light of Justice Castille's cogent, thoughtful and well-reasoned concurring opinion in ***O'Berg***, we conclude that, in the case at bar, Appellant's claims of ineffective assistance of counsel may not be reviewed on direct appeal before this Court.

***Id.*** at 1083-1084. Consequently, the law does not provide appellant with an avenue to pursue his ineffective assistance of summary trial counsel claims.

*See Commonwealth v. Reigel*, 75 A.2d 1284, 1288-1289 (Pa.Super. 2013).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/20/2015