J-S71021-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
SEAN WAYNE :
:
Appellant : No. 3651 EDA 2018

Appeal from the Judgment of Sentence Entered November 9, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009331-2016

BEFORE: BOWES, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY MURRAY, J.: **FILED FEBRUARY 06, 2020**

Sean Wayne (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of unlawful contact with a minor, indecent assault of a person less than 13 years of age, and corruption of minors.[1] We affirm in part and vacate in part.

The trial court summarized the relevant underlying facts as follows:

[The victim,] D.M., who was eleven at the time of trial,[2] testified that Appellant was her [maternal] aunt's boyfriend [at the time of the crimes]. When [D.M.] was nine years old, and in the third grade, Appellant touched her chest, buttocks and vagina. He did so in more than one location in the house [in which D.M.,

---

[1] 18 Pa.C.S.A. §§ 6318(a), 3126(a)(7), 6301(a)(1).

[2] The Commonwealth has filed with this Court a motion to seal the certified record to protect the privacy of D.M., pursuant to 42 Pa.C.S.A. § 5988(a). We grant the motion.

Appellant, D.M.'s aunt, and several of D.M.'s siblings and cousins] resided[,] and on more than one occasion[.[3]]

The first incident occurred in the hallway just outside the bathroom in the home where [D.M.] and Appellant resided. On that occasion, Appellant stopped D.M. with his arm, the[n] touched her buttocks and vagina outside of her clothes. He stopped when she told him to. After the incident, D.M. told her oldest brother, Q.M., who was about 11 years old.

The second incident occurred in the kitchen, when D.M. went to get some food. Appellant touched D.M. on her chest, outside of her clothes. There were more than five other occasions when Appellant touched D.M. on her chest, outside [of] her clothes, in the kitchen. At some point[,] Appellant also touched D.M. under her clothes. Appellant would ask D.M.: "Does that feel good?"

In addition to touching her, Appellant exposed his genitals to D.M. and showed her pictures of naked girls on his phone. [Following the assaults,] D.M.'s behavior markedly changed and she started acting out in school. When her school counsellor, Jennifer Manness, asked her why she was misbehaving, D.M. disclosed what Appellant had done to her.

The Commonwealth also presented the transcript of Appellant's [prior] guilty pleas[, in December 2012,] to charges of indecent assault and corrupting the morals of a minor on two cases.[4]

---

[3] D.M. estimated that Appellant assaulted her on more than ten separate occasions. **See** N.T., 6/5/18, at 46, 72, 74.

[4] Appellant's guilty pleas arose from separate sexual assaults of two minor sisters, As.P. and Am.P. (collectively, "the P. sisters"), whom he resided with at the time and was babysitting when he assaulted them. On multiple separate occasions, Appellant touched the P. sisters' genitals, placed his fingers inside of their genitals, and forced them to touch his penis. Appellant was the paramour of the P. sisters' maternal aunt at that time. We will refer to this evidence as the "prior crimes evidence." For these crimes, Appellant was sentenced to an aggregate term of 9 to 23 months in jail, followed by three years of sex offender probation.

Appellant presented testimony from his sister as to the nature of the household, name[ly] that there were numerous people always around, making it unlikely that Appellant was ever alone with D.M.

Trial Court Opinion, 2/25/19, at 2-3 (footnotes added, citations to record omitted).

In July 2016, the Commonwealth charged Appellant with the above-mentioned offenses, as well as two others that were subsequently *nolle prossed*. On March 20, 2017, the Commonwealth filed a Motion *in Limine* to Admit Other Acts/Crimes Evidence Pursuant to Pa.R.E. 404(b)[5] (the "Rule 404(b) Motion"), seeking to introduce the prior crimes evidence at trial. The Commonwealth asserted in this motion, in relevant part, as follows:

[T]he following shared characteristics and striking similarities[, *i.e.*, between the assaults that Appellant perpetrated on the P. sisters and D.M.,] establish a nexus and relate these alleged crimes as part of a common plan, scheme, and design:

1. All of the victims [that Appellant] sexually assaulted were black females;

---

[5] Rule 404(b) provides, in relevant part, as follows:

**(1) Prohibited Uses.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that[,] on a particular occasion[,] the person acted in accordance with the character.

**(2) Permitted Uses.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case[,] this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b).

2. All of the victims were known to [Appellant] in his role as their maternal aunts' boyfriend;

3. The victims were [all] between ages the ages of 6-9;

4. All of the assaults occurred in the houses where [Appellant] resided with the victims;

5. [Appellant] committed similar acts against each victim – touching their vaginas under their clothing, exposing his penis to the victims, and making the victims touch his penis[.]

Rule 404(b) Motion, 3/20/17, at 8. The Commonwealth asserted that the prior crimes evidence was relevant and admissible under Rule 404(b), and that its probative value significantly outweighed its potential for unfair prejudice. The trial court conducted a hearing on the matter, at the close of which the court granted the motion.

The case proceeded to a jury trial. Relevant to this appeal, the trial court issued jury instructions concerning credibility assessments, conflicting testimony, and the limited purpose for which the jury could consider the prior crimes evidence. *See* N.T., 6/6/18, at 50-53, 55. The jury found Appellant guilty of all counts. Prior to sentencing, the trial court ordered the preparation of a pre-sentence investigation report (PSI), as well as a mental health evaluation report.

On November 9, 2018, the trial court sentenced Appellant to 2½ to 7 years in prison on the unlawful contact with a minor conviction, a consecutive term of 2½ to 7 years in prison on the corruption of minors conviction, and a concurrent term of 3½ to 14 years in prison on the indecent assault conviction,

resulting in an aggregate prison term of 5 to 14 years. Relevant to this appeal, these sentences were above the recommended ranges of the Sentencing Guidelines, which called for a sentence range of 6 to 14 months in prison, plus or minus 6 months.

Appellant timely filed a post-sentence motion, asserting that the aggregate sentence was manifestly excessive and unjust, and that the jury's verdicts were against the weight of the evidence. The trial court denied the motion without a hearing. Appellant filed a timely notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court then issued a Rule 1925(a) opinion.

Appellant now presents the following issues for our review:

A. Whether the motion court erred by permitting the admission of other crimes evidence against Appellant pursuant to Pennsylvania Rule[] of Evidence 404(b)?

B. Did the trial court abuse its discretion by refusing to grant a new trial, as the verdict was against the weight of the evidence?

C. Whether the sentencing court abused its discretion by entering manifestly excessive and clearly unreasonable sentences, where the sentences violated the Sentencing Guidelines, where the trial court overly focused on the offenses and ignored Appellant's mitigating circumstances, [and] where the sentences greatly exceeded the Sentencing Guidelines?

Brief for Appellant at 8 (capitalization and answers to questions omitted).

In his first issue, Appellant argues that the trial court erred in granting the Commonwealth's Rule 404(b) Motion and ruling that the prior crimes evidence was admissible where:

> (1) the respective sexual assaults were insufficiently factually similar to show a common plan or scheme by Appellant, and;
>
> (2) the prejudicial impact of the prior crimes evidence greatly outweighed its limited probative value, particularly where this evidence was
>
>> (i) introduced to show Appellant's propensity to sexually assault minor girls;
>>
>> (ii) superfluous in light of the Commonwealth's numerous witnesses who testified to the alleged sexual assaults of D.M.

*See* Brief for Appellant at 18-22.  We disagree.

Our standard of review is as follows:

> The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

*Commonwealth v. Cosby*, 2019 PA Super 354, at *47 (Pa. Super. 2019) (citation omitted).

Under Rule 404(b), evidence of prior bad acts can be admitted to show a common plan or scheme where the probative value of such evidence outweighs its potential for unfair prejudice.  Pa.R.E. 404(b)(2).  "'Unfair prejudice' means a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially."  *Commonwealth v. Dillon*, 925 A.2d 131, 141 (Pa. 2007) (quoting Pa.R.E. 403, Comment).  "Additionally, when weighing the potential

for prejudice, a trial court may consider how a cautionary jury instruction might ameliorate the prejudicial effect of the proffered evidence." *Id.*

To determine whether the common plan or scheme exception of Rule 404(b) applies, the trial court must "examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator." *Cosby*, 2019 PA Super 354, at *49 (citation omitted); *see also Commonwealth v. Ivy*, 146 A.3d 241, 253 (Pa. Super. 2016) (explaining that the circumstances of the crimes need not be identical, but there must be a "logical connection between them."). The court can look to factors such as, *inter alia*, age, race, relationship, and the specific acts that are committed. *See Commonwealth v. Luktisch*, 680 A.2d 877, 879 (Pa. Super. 1996).

Appellant attempts to distinguish his situation from this Court's decision in *Commonwealth v. O'Brien*, 836 A.2d 966 (Pa. Super. 2003). The *O'Brien* Court reversed a trial court's ruling excluding evidence of the defendant's prior sexual assaults of two minor boys, where the defendant was accused of sexually assaulting a third minor boy. *Id.* at 970. This Court discerned a logical connection to demonstrate a common plan because the victims were within the same age range, each boy's parents were friends of the defendant, each boy had similar personal characteristics, each of the assaults occurred in the defendant's home, and the respective sexual acts

were similar in nature. *Id.*; *see also Commonwealth v. Aikens*, 990 A.2d 1181, 1185 (Pa. Super. 2010) (where the defendant was convicted of sexually assaulting his minor, biological daughter, holding that the trial court properly admitted evidence that the defendant had previously sexually assaulted a different biological daughter as proof of his common plan or scheme, where the "fact pattern involved in the two incidents was markedly similar."). Contrary to Appellant's assertion, the circumstances of *O'Brien* are nearly identical to those in the instant case, and Appellant's assaults of D.M. and the P. sisters were "markedly similar" and shared a "logical connection." *See* Commonwealth's Rule 404(b) Motion, 3/20/17, at 8, *supra* (correctly listing the similarities). Moreover, Appellant's emphasis on the fact that he was babysitting the P. sisters at the time of his assaults, whereas he was not babysitting D.M. during the assaults, is unavailing. *See* Brief for Appellant at 19. During all of the assaults, Appellant, an adult residing in the respective homes of the minor girls, was in a position of trust and authority over his victims and criminally abused that position.

Finally, the prejudicial impact of the prior crimes evidence was ameliorated by the trial court's instruction to the jury as to the limited purpose for which it could consider this evidence. *See Dillon*, *supra*; *see also id.* at 141 (stating that "[e]vidence will not be prohibited merely because it is harmful to the defendant. [A court] is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts

are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." (citation and quotation marks omitted)). Accordingly, the trial court did not err in admitting the prior crimes evidence under Rule 404(b), and Appellant's first issue does not merit relief.

In his second issue, Appellant asserts that the trial court erred when it found that the jury's verdicts were not against the weight of the evidence. *See* Brief for Appellant at 22-23. Appellant avers:

> Multiple persons, both adults, and children, were present in the residence when [Appellant] engaged in the incidents that led to his convictions; the incidents happened in common areas of the house, in the hallway outside of the bathroom and in the kitchen area[,] just before or at mealtime for the whole house; there was no D.N.A[.] evidence, no medical records, [and] no eyewitnesses to any of the incidents; D.M., D.M.'s brother[, Q.M.,] and [Appellant's] sister all testified that [Appellant] was rarely present in the house where the incidents occurred; D.M. told at least three different versions of what [Appellant] did to her; and D.M. could not give any specific date, day of week, and/or time when [Appellant] engaged in the incidents that led to his convictions.

*Id.*

Our standard of review of a weight of the evidence claim is well-settled:

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence[,] and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) (quotation marks and citations omitted); *see also Commonwealth v. Cramer*, 195 A.3d 594, 601 (Pa. Super. 2018) (stating that a defendant will only prevail on a challenge to the weight of the evidence when the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the court). Moreover, "[i]n a prosecution for sex offenses, a verdict may rest on the uncorroborated testimony of the victim." *Commonwealth v. Cody*, 584 A.2d 992, 993 (Pa. Super. 1991) (citing 18 Pa.C.S.A. § 3106).

Here, the trial court offered the following rationale in rejecting Appellant's weight claim:

Assuming that there were contradictions or conflicts in the testimony, as Appellant claims, it is the role of the jury "to weigh the evidence and resolve conflicts therein." *Commonwealth v. Story*, 383 A.2d 155, 167 (Pa. 1978)…. Resolving conflicts in the testimony is an "appropriate jury function and [an] appellant will not be heard to complain." *Commonwealth v. Gardner*, 416 A.2d 1007, 1009 (Pa. 1980). Here, the jury was properly instructed on how to evaluate conflicting evidence. N[.]T[.,] 5/2/18, [at] 54-56. "Our law presumes that juries follow the court's instructions as to the applicable law." *Commonwealth v. Hawkins*, 701 A.2d 492, 503 (Pa. 1997).

This [c]ourt observed the testimony of the minor complainant, as well as that of her older brother[, Q.M.] The [c]ourt also observed the forensic interview of D.M. Her failure to remember specific dates, or more narrowly define time periods[,]

- 10 -

was consistent with her tender years.[6]  As to the details of Appellant's conduct, her testimony was credible and any inconsistencies were due to her age, the passage of time and her desire to put the events out of her mind.  She made prompt complaint to [Q.M.] and eventually told her school counsellor what Appellant had done to her.

Under all the facts and circumstances of the evidence presented at trial, the lack of corroboration and alleged conflicts in testimony do not weigh so heavily as [to] render the verdict contrary to the weight of the evidence.  Nor was Appellant's defense – [*i.e.*, that] there were just to[o] many people around [the residence] all the time for these incidents to have occurred – particularly persuasive.  This [c]ourt is in no way shocked by the verdict, which was based upon the credible and not meaningfully impeached testimony of the minor complainant.

Trial Court Opinion, 2/25/19, at 5-6 (footnote added).

We agree with the trial court.  It was within the sole province of the jury to determine the weight of the evidence, including resolving conflicts in the testimony and credibility questions.  ***See Gonzales***, ***supra***.  "[T]he evidence [was not] so tenuous, vague and uncertain that the verdict shocks the [collective] conscience of the [C]ourt."  ***See Cramer***, ***supra***.  Therefore, Appellant's second issue lacks merit.

---

[6] In this regard, ***see Luktisch***, 680 A.2d at 880 (explaining that "when a young child is a victim of crime, it is often impossible to ascertain the exact date when the crime occurred.  He or she may only have a vague sense of the days of the week, the months of the year, and the year itself.  If such children are to be protected by the criminal justice system, a certain degree of imprecision concerning times and dates must be tolerated." (citation omitted)).

In his third and final issue, Appellant contends that the trial court abused its discretion in imposing a manifestly excessive and unjust aggregate prison sentence, which exceeded the Sentencing Guidelines ranges, where the court:

(1) overly focused on the gravity of the offenses, but ignored other factors and the Sentencing Guidelines; and

(2) failed to adequately consider Appellant's characteristics and mitigating factors, including his mental health problems.

**See** Brief for Appellant at 15-16, 23-26.

Before we reach the merits of Appellant's claim challenging the discretionary aspects of his sentence, we must examine the legality of the sentence.[7]   The Commonwealth candidly, and correctly, concedes that although the aggregate sentence is legal, the sentence imposed for indecent assault exceeded the statutory maximum, and must therefore be vacated.[8] **See** Brief for the Commonwealth at 20.  The Commonwealth asserts that we should remand the case for resentencing.  **See id.**

Although we agree that the sentence imposed for indecent assault is illegal, and thus vacate that sentence, we need not vacate the entire judgment

---

[7] Though Appellant did not challenge the legality of his sentence in his brief or his post-sentence motion, issues of legality of a sentence are never waived and may be reviewed *sua sponte* by this Court.  **See Commonwealth v. Hughes**, 986 A.2d 159, 161 (Pa. Super. 2009).

[8] Indecent assault, graded as a third-degree felony (**see** 18 Pa.C.S.A. § 6318(b)(2)), has a lawful maximum sentence of 7 years in prison.  18 Pa.C.S.A. § 1103(3).  The trial court here imposed a prison sentence of 3½ to *14* years on the indecent assault conviction.

of sentence and remand for sentencing, where our disposition does not alter the sentencing scheme. Because the trial court ordered the indecent assault sentence to run *concurrently* to the sentences imposed on the two other convictions, and the aggregate sentence is legal, no remand for resentencing is necessary. ***See Commonwealth v. Henderson***, 938 A.2d 1063, 1067 (Pa. Super. 2007) (stating that "since appellant's sentences were concurrent, the trial court's overall sentencing scheme has not been compromised, and it [wa]s not necessary to remand for re-sentencing" following one illegal sentence in a multi-count case).

We now proceed to address Appellant's challenge to the discretionary aspects of his aggregate sentence of 5 to 14 years in prison. There is no absolute right to appeal the discretionary aspects of a sentence. ***See Commonwealth v. Hill***, 66 A.3d 359, 363 (Pa. Super. 2013). Rather, where, as here, the appellant has preserved the sentencing challenge for appellate review, by raising it in a timely post-sentence motion, he must (1) include in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence, pursuant to Pa.R.A.P. 2119(f); and (2) show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. ***Hill***, 66 A.3d at 363-64.

Appellant has included a Rule 2119(f) Statement in his brief. ***See*** Brief for Appellant at 15-16. Moreover, Appellant's claim presents a substantial

question. *See Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) (noting that although an allegation that the sentencing court failed to consider certain mitigating factors generally does not necessarily raise a substantial question, a substantial question is raised where an appellant alleges that the sentencing court imposed a sentence in the aggravated range or above, without adequately considering mitigating circumstances); *see also Commonwealth v. Knox*, 165 A.3d 925, 929-30 (Pa. Super. 2017) (observing that "[a] claim that the trial court focused exclusively on the seriousness of the crime while ignoring other, mitigating circumstances, such as [the defendant's] mental health history and difficult childhood, raises a substantial question.").

Accordingly, we review the merits of Appellant's claim, mindful of our standard of review: "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Barnes*, 167 A.3d 110, 122 n.9 (Pa. Super. 2017) (*en banc*) (citation omitted).

In every case where a sentencing court imposes a sentence outside of the Sentencing Guidelines, the court must provide in open court a contemporaneous statement of reasons in support of its sentence. *Commonwealth v. Shull*, 148 A.3d 820, 835-36 (Pa. Super. 2016) (citation omitted). When doing so,

> a trial judge … [must] demonstrate on the record, as a proper starting point, its awareness of the sentencing guidelines. Having

done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as it also states of record the factual basis and specific reasons which compelled it to deviate from the guideline range.

*Commonwealth v. Bowen*, 55 A.3d 1254, 1264 (Pa. Super. 2012) (citation and brackets omitted); *see also* 42 Pa.C.S.A. § 9721(b). Moreover, it is important to remember that the Sentencing Guidelines are purely advisory in nature. *Commonwealth v. Yuhasz*, 923 A.2d 1111, 1118 (Pa. 2007).

Here, the sentencing court offered the following reasons on the record for imposing sentences above the Sentencing Guidelines ranges:

> I've considered the arguments of both counsel, the [PSI[9]], the sentencing guidelines form, the mental health evaluation report, the Commonwealth's sentencing memorandum, the particular circumstances in this case, as well as [Appellant's] allocution.
>
> This [c]ourt finds a number of aggravating factors in this case that must guide this sentence, which include the fact that this is a repeated offense of the same type, [*i.e.*, regarding Appellant's prior assaults of the P. sisters,] in addition to [Appellant's] being under supervision for precisely this kind of conduct when he committed the offense of conviction.
>
> This [c]ourt finds that the [Sentencing G]uidelines somewhat under represent the seriousness of this offense in general and that they under represent [Appellant's] propensity to commit more [crimes] of this type in particular.

---

[9] It is well-established that where a sentencing court is informed by a PSI, it is presumed that the court is aware of all appropriate sentencing factors and considerations (including any mitigating factors), and that "where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009).

This [c]ourt finds that society needs to be protected. In particular, children need to be protected from this type of conduct from [Appellant], which so far has been undeterred by his supervision.

This [c]ourt must also consider the impact on the victim. This [c]ourt also finds that [Appellant's] rehabilitative needs require more confinement than the six to [fourteen] months[,] plus [or minus] six [months,] that the [Sentencing G]uidelines call for.

Now, as mitigating factors, this [c]ourt does take into serious account [Appellant's] tragic personal history due to both his substance abuse [] and history of sexual abuse. It is also aware of [Appellant's] work history. This [c]ourt does credit [Appellant's] words of remorse.

N.T., 11/9/18, at 19-21 (footnote added).

Additionally, in its opinion, the trial court explained:

[Concerning Appellant's prior convictions related to his assaults of the P. sisters, Appellant] had been given the advantage of a shorter period of incarceration, [and] sex offender treatment and supervision, yet he nonetheless re-offended. Indeed, even while on probation and parole for the earlier offenses, he violated and was resentenced twice, before the instant conviction[s]. … He also demonstrated a continuation of his pattern of involving himself with paramours who had young children in the house, then grooming and abusing those children. Further, the evidence established that Appellant's illegal sexual conduct with [D.M.] was not a single isolated incident, but was persistent and repeated over an extended period.

Trial Court Opinion, 2/25/19, at 7-8.

Our review of the record amply supports the trial court's rationale, and

we discern no error or abuse of the court's discretion in imposing sentences

that were above the Sentencing Guidelines ranges.[10]  Accordingly, Appellant's third issue lacks merit.

Judgment of sentence affirmed in part and vacated in part, consistent with this Memorandum.  Motion to seal the certified record granted. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/6/20

_____

[10] Additionally, we reiterate the well-settled principle that the imposition of consecutive as opposed to concurrent sentences is solely within the sound discretion of the trial court. *See Commonwealth v. Johnson*, 961 A.2d 877, 880 (Pa. Super. 2008).